E. W. HIGHTOWER ET AL. v. CITY OF RALEIGH ET AL.

(Filed 5 May, 1909.)

1. **Municipal Corporations—Cities and Towns—Bond Issues—Necessary Buildings—Legislative Powers—Power of Court.**

   A municipal building in cities the size of Raleigh is a recognized municipal necessity, and bonds issued for that purpose, under proper authority given by the Legislature, in consequence of a resolution of the board of aldermen declaring such building a necessity and a necessary municipal expense, are valid without the approval of a majority of the qualified voters. (Article VII, section 7, Constitution.)

2. **Municipal Corporations—Cities and Towns—Necessary Buildings—Discretion—Power of Court.**

   The courts may determine what are necessary public buildings and what class of expenditures fall within the definition of the necessary expenses of a municipal corporation, but the authority for determining the kind of building or its reasonable cost is vested in the Legislature, and to a municipal corporation when it is delegated to it, and not in the courts.

3. **Municipal Corporations—Cities and Towns—Necessary Buildings—Special Commission—Discretion.**

   An act conferring the authority upon a commission of taxpayers to employ a competent architect to prepare and furnish plans for the erection, etc., of a necessary municipal building for a city, to be approved by the commission, without defining what is a proper municipal building or limiting the power of the commission to determine the quality of the structure, leaves such matters to the sound judgment and discretion of the commission.

4. **Municipal Corporations—Cities and Towns—Necessary Buildings—City Hall—Discretion—Injunction.**

   The fact that a city contemplates having a city hall on one of the floors of a municipal building, to be built under authority conferred by statute to erect a necessary municipal building, does not invalidate a bond issue likewise authorized for the purpose, or furnish reason for enjoining their issuance.

5. **Municipal Corporations—Cities and Towns—Necessary Buildings—Bond Issue—Diverting Funds—Purchaser—Application of Funds.**

   The purchasers of bonds lawfully issued by a city under legislative authority for the purpose of erecting a necessary municipal building are not required to look after the application of the pro-

ceeds, and the bonds will not be affected by the municipal authorities diverting the proceeds to an unlawful purpose, though the authorities themselves may be liable therefor.

·ACTION heard by *Lyon, J.,* upon motion for injunction, at. April Term, 1909, of WAKE.

From the judgment of the court refusing the injunction plaintiffs appeal.

The facts are set out in the opinion of the Court.

*James H. Pou* for plaintiffs.
*W. B. Jones* and *Aycock & Winston* for defendants.

BROWN, J. This action is brought by the plaintiffs against the City of Raleigh and others to restrain the city from issuing bonds of said city in the sum of $125,000 for the purpose of erecting a municipal building in said city, and to restrain the building commission from proceeding with the erection of said building. The bonds are to be issued under the authority of an act of the General Assembly, ratified 8 March, 1909, entitled "An act to erect a municipal building in the City of Raleigh." The Board of Aldermen of the City of Raleigh had, before the passage of said act, adopted the following resolution:

*"Be it resolved by the Board of Aldermen of the City of Raleigh,* That the building now used as a police station and occupied by the municipal officers of the said city is totally inadequate, unsafe and unsanitary, and not suited to the purposes for which it is used, and the good of the city demands the immediate erection of a building suitable for said purpose.

"2. That the senators and representatives of Wake County in the present General Assembly are hereby requested to introduce into said General Assembly a bill conferring upon the board of aldermen, and such subsidiary commission as they think proper, authority to issue bonds, to the amount of $125,000, to sell the same, and use the proceeds thereof in the erection, furnishing and equipment of such building, and the General Assembly is requested to enact the said bill into a law."·

The findings of the board of aldermen declare that a municipal building is a necessity and a necessary municipal expense.

Upon such finding the General Assembly has empowered and directed the issue of the bonds now sought to be restrained.

While legislative authority is desirable and even necessary to authorize the special tax and sinking fund, it was not absolutely necessary to enable the municipal authorities to contract this debt. They have that power under the Constitution, inasmuch as a municipal building in cities the size of Raleigh is a recognized municipal necessity, as much so as a courthouse is to a county. McQuillan on Mun. Ord., sec. 511; *Bates v. Bassett,* 1 L. R. A., 166; *Greely v. People,* 60 Ill., 22.

The approval of a majority of the qualified voters is not necessary to validate a debt contracted in order to procure the necessary funds for constructing such building. Constitution, Art. VII, sec. 7; *Swinsin v. Mt. Olive,* 147 N. C., 612; *Faucette v. Mt. Airy,* 134 N. C., 125; *Wilson v. Charlotte,* 74 N. C., 748; *Vaughan v. Commissioners,* 117 N. C., 429.

Without legislative authority a special tax could not be levied or a sinking fund created. *Commissioners v. McDonald,* 148 N. C., 126. To give value to these bonds there is both the constitutional power of the board of aldermen as well as the special legislative enactment authorizing them and providing for their payment. But it is contended that the bonds ought not to be issued because the building commission provided for by the act of 1909 has in contemplation the erection of a municipal building containing a city hall in some part of it.

While it is within the province of the courts to determine what are necessary public buildings and what classes of expenditures fall within the definition of the necessary expenses of a municipal corporation, the authority for determining the kind of building that is needed, or what would be a reasonable cost for it, is not within the purview of the judicial authority. It is vested in the legislative and municipal authority, and not in the courts. *Vaughan v. Commissioners, supra.*

"For the exercise of powers conferred by the Constitution," says *Chief Justice Pearson,* "the people must rely upon the honesty of the members of the General Assembly and of the persons elected to fill places of trust in the several counties. The court has no power, and is not capable if it had the power, of controll-

ing the exercise of power conferred by the Constitution upon the legislative department of the Government or upon the county authorities." Quoted in *Vaughan v. Commissioners, supra. Broadnax v. Groom,* 64 N. C., 244, where this question is first discussed by the learned Chief Justice.

The act confers upon a commission of five taxpayers and citizens of Raleigh full power "to employ a competent and reputable architect to prepare and furnish plans for the erection, completion and furnishing of the said municipal building," which plans are to be approved by the commission. The act nowhere defines what is a proper municipal building, nor does it put any limitation upon the power of the commission to determine the quality and character of the structure. Those matters are left to the sound judgment and discretion of the building commissioners. It is presumed that they will in good faith carry out the letter and spirit of the statute.

The allegation in the complaint that they contemplate having a city hall upon one floor of the building does not invalidate the bonds, and furnishes no reason for enjoining their issue. Their validity is to be determined by the purpose for which they are issued, as appears upon the resolutions of the board of aldermen and the act of Assembly. If the courts adjudge that, upon the face of the act and resolutions authorizing the bonds, they are to be issued for a necessary municipal expense, then they are valid, without the approval of the qualified voters. The purchaser will not be required to look to the application of the proceeds.

If, after the bonds are issued and sold, the proceeds are diverted by the municipal authorities to some purpose unauthorized by law, the bonds will not be affected in the hands of purchasers, although the authorities themselves would be liable for any such misapplication.

The judgment of the Superior Court is
Affirmed.