REDEVELOPMENT COMMISSION OF GREENSBORO, PETITIONER V.
BERNICE T. HAGINS, (HAGAN) AND HUSBAND J. G. HAGINS, RESPONDENTS
AND
REDEVELOPMENT COMMISSION OF GREENSBORO, PETITIONER V.
BERNICE T. HAGINS (HAGAN) AND HUSBAND, J. G. HAGINS, RESPONDENTS.

(Filed 12 December 1962.)

**1. Eminent Domain § 1—**

The power of eminent domain as limited by constitutional safeguards is inherent in sovereignty. 14th Amendment to the Constitution of the United States; Constitution of North Carolina, Art. I, § 7.

**2. Eminent Domain § 7c—**

The petition in proceedings by a housing authority to condemn land for a housing project must affirmatively show compliance with the statutory requirements, including the existence of a properly approved redevelopment plan, the boundaries of the project, existing uses, proposed uses, population density, proposed changes in zoning ordinances, street layouts, a feasible plan for the relocation of displaced families, and the estimated cost of the project and methods by which the authority may lawfully finance the entire project, and if the petition fails to allege any of these essentials it is fatally defective. G.S. 160-463.

**3. Eminent Domain §§ 3, 7c; Taxation § 6—**

The condemnation of land by a housing authority for a housing project is for a public purpose. Whether it is for a necessary purpose, *quaere?* Constitution of North Carolina, Art. 7, § 7.

**4. Eminent Domain § 7c—**

Condemnation of property is a proceeding *in rem*, and in condemning land for a housing project the authority may join in one proceeding all parties owning land in the area which the authority seeks to condemn, leaving only the question of just compensation due each respondent to be determined in a separate inquiry, but if the authority elects to institute separate proceedings it must allege in each instance all the facts necessary to justify the taking.

**5. Same—**

In condemnation proceedings instituted by a housing authority each respondent is entitled to defend upon the ground that his property does not qualify for the purpose intended, or that its selection was the result of arbitrary or capricious conduct on the part of the authority.

**6. Appeal and Error §§ 2, 7—**

A party may demur *ore tenus* in the Superior Court for failure of the pleading to state a cause of action, and even in the absence of demurrer, the Supreme Court will take notice of such defect *ex mero motu.*

APPEAL by respondents from *Shaw, J.,* GUILFORD Superior Court, Greensboro Division, April 26, 1962.

On August 7, 1961, Redevelopment Commission of Greensboro instituted before the Clerk Superior Court two proceedings in condemnation, Nos. 23252 and 23253. The petition in each proceeding called for the condemnation of one small lot. The petitions are identical except as to the description of the lands sought to be taken. Omitting the descriptions, which are not in dispute, each petition alleged:

"Before the Clerk — Petition for Condemnation — #23252. Filed 7 August 1961 — 10:49 a.m., J. P. Shore, C.S.C.

"Comes now the petitioner, REDEVELOPMENT COMMISSION OF GREENSBORO, and respectfully shows unto the Court:

"1. That the petitioner is a corporation organized and existing under and by virtue of the laws of the State of North Carolina, and as such exercises certain powers contained in the National Home and Housing Finance Act, and powers conferred in the General Statutes of North Carolina. That petitioner is now engaged in a program or project of slum and blighted area clearance. That acquisition of certain property is necessary to complete this program of blight and slum clearance, all being in the city of Greensboro, North Carolina.

"2. That records in the office of the Register of Deeds of Guilford County, North Carolina, Book 1019, Page 279, dated September 3, 1943, reflect that the hereinafter described property was conveyed to Bernice Murray Taylor Hagins and husband, J. G. Hagins; that there have been no conveyances of said property since the 3rd day of September 1943.

"3. That the property conveyed to the respondents is situated in Gilmer Township, Greensboro, Guilford County, North Carolina, and more particularly described and defined as follows: * * *

"4. That it is necessary for the petitioner to acquire said property for the purpose of completing the blighted and slum clearance

program. That petitioner has attempted to purchase and acquire the above described property but has been unsuccessful in that the respondents refuse to sell said property to the petitioner for the price tendered by the petitioner, although said property lies within the blighted and slum clearance project area.

"5. That the petitioner is endowed with and has the power of eminent domain; that should the petitioner obtain or take said property it will in good faith proceed to complete the project of blighted and slum area clearance; that its Chairman has been authorized to execute all necessary pleadings.

"WHEREFORE, petitioner prays:

"1. That Commissioners of Appraisal be appointed by this Court to determine the damage to the respondents for the acquisition of the property described in paragraph 3 of this Petition.

"2. That the Court order such amount as is determined upon to be paid by the petitioner into court for the use and benefit of the respondents.

"3. That the petitioner be authorized to enter upon and take possession of said property forthwith upon said payment of monies into this Court."

In answer to the petition in No. 23252, Mrs. Hagins wrote the following:

"In reference to property at 121 N. Regan Street, my home in which I have lived for the past 21 years, a two-story house nine (9) room 1-½ bath steam heat all modern convenience. I have kept my home up.

"If this property is needed for the Street then they can move my house on a corner farther down Regan Street. If it is for business to be built on then I shall keep my land and build a business on it myself or whatever the city require one to build on it. I will not sell. I am hoping there is no law in the land that you can come and take one's home away just because someone want it for their use. What ever the City of Greensboro require to be built here I will build. /s/ Mrs. Bernice T. Hagins."

And in No. 23253, she wrote the following:

"In reference to property at 403 N. Regan Street and 641 Lindsay Street.

"The building is a new brick building with three (3) apt and a Beauty Shop operated by my daughter and myself. It was finished in 1957 by the right given to me, Mrs. B. T. Hagins, by the Greensboro City Council.

"If this property is wanted by the Redevelopment of Greensboro, I will not sell but will exchange if they will build me a building equal

on a corner lot the same distant from downtown Greensboro, North Elm Street. Then we can do business otherwise unless there is a law that you can just come and take my property they will have to take it. /s/ Mrs. Bernice Taylor Hagins."

On August 25, 1961, the Clerk Superior Court, treating the respondents' letters as appearances and answers, concluded that no sufficient cause had been shown against the granting of the relief prayed for, and appointed commissioners to appraise the premises involved. On August 17, 1961, the commissioners filed their report, fixing the value of the property in proceeding No. 23252 at $9,300.00, and in No. 23253 at $17,500.00. After repeated hearings on motions and countermotions, the clerk on May 20, 1962, confirmed the award. Thereupon the respondents appealed.

Judge Shaw, in the superior court, conducted extensive hearings involving the regularity of the proceedings, confirmed the orders of the clerk and adjudged that title to the premises be transferred to the petitioner. The respondents appealed.

*Cannon & Wolfe by J. Archie Cannon, for petitioner appellee.*
*Major S. High, C. O. Pearson, for respondents, appellants.*

HIGGINS, J.  The power of eminent domain is one of the attributes of a sovereign state. The right to take private property for public use exists independently of constitutional provisions. In fact, such provisions are limitations on the state's power to exercise the right. 18 Am. Jur., p. 634; 29 C.J.S., § 3, p. 781; *DeBruhl v. Highway Comm.*, 247 N.C. 671, 102 S.E. 2d 229; 14th Amendment to the Constitution of the United States; Article I, Section 17, Constitution of North Carolina.

When the State of North Carolina, or one of its subdivisions or agencies thereto lawfully authorized by proper legislation, undertakes to condemn private property, the court will determine as a matter of law whether the proposed use is for a public purpose. *Charlotte v. Heath*, 226 N.C. 750, 40 S. E. 2d 600, 169 A.L.R. 569. This Court, in *Redevelopment Commission v. Bank*, 252 N.C. 595, 114 S.E. 2d 688, has determined that lands acquired for the purposes and in the manner set forth in Chapter 160, Article 37, General Statutes, meet the public purpose test. *Justice Parker's* well documented opinion in *Redevelopment Commission v. Bank, supra*, permits no other conclusion. See especially, *Berman v. Parker*, 348 U.S. 26, 99 L. ed. 27.

Having determined that slum clearance as contemplated by G.S. 160, Article 37, qualifies as a public purpose, we hold the act fixes safeguards and standards sufficiently definite to enable the petitioner, the

City of Greensboro and its agencies, to set up and establish a slum clearance project embracing blighted areas in the city. In order to establish petitioner's right to take the respondents' property by condemnation, the petition must affirmatively show compliance with the statutory requirements. These requirements are set forth in the act. They are fully discussed in *Redevelopment Commission v. Bank, supra.* Among the requisites are: a properly approved redevelopment plan showing the boundaries of the area, existing uses, proposed uses, population density, proposed changes in zoning ordinances, street layouts, a feasible plan for the relocation of displaced families, and "(7) A statement of the estimated cost and method of financing of acquisition of the redevelopment area, and of all other costs necessary to prepare the area for redevelopment." G.S. 160-463, 1961 Cumulative Supplement.

Subsection (c) provides: "A commission shall not acquire real property for a development project unless the governing body of the community in which the redevelopment project area is located has approved the redevelopment plan, as hereinafter prescribed." The section then sets out what the plan must include.

The adoption of the plan is equivalent to a cease and desist order preventing any development, rental, or sale of the property within the area. In order that property owners may be protected against threatened taking which is never consummated, the act wisely requires a showing that the acquiring agency has a lawful plan by which, among other things, it may lawfully finance the whole area. Each landowner has the right to know that the taking agency has on hand the money to pay for his property or, in lieu thereof, has present authority to obtain it. Having held the acquisition is for a public purpose, we must not be understood as holding that the acquisition is for a *necessary* public purpose.

The petitions in these proceedings fall far short of the showing required. This Court considered a similar deficiency in the case of *R.R. v. R.R.*, 106 N.C. 16, 10 S.E. 1041: "The foregoing references are made for the purpose of showing the true spirit and purpose of these laws, and that the performance of the preliminaries required is indispensably necessary before proceedings to condemn can be instituted. It is said that, although the petition in this case fails to allege the performance of these conditions, the omission is not fatal, and that it is but a defective statement of a good cause of action. We do not concur in this view. The exercise of the power of eminent domain is in derogation of common right, and all laws conferring such power must be strictly construed. By the very terms of the law under consideration, these allegations *must* be made in the petition, and we think that they

are as much jurisdictional in their character as is the fact that the landowner and the railroad company have failed to agree. 'If the petition does not state the facts required by the statute to be stated, an objection in that regard can be raised preliminarily . . . by way of demurrer, . . . ' "

Each of the two small parcels of land here involved is the subject of a separate condemnation proceeding. The two proceedings appear to have been joined because the respondents owned both lots. We may seriously question whether the Legislature contemplated a separate judicial proceeding for each lot or parcel of land any more than it contemplated a separate plan for each parcel. It seems obvious the plan embraces the whole area as a unit. Certain it is that ability to finance the acquisition of one or two tracts is not a showing of a proper plan for financing the development, including the arrangements for relocating displaced families.

Reason does not appear why the condemnation proceedings covering the whole planned area may not be instituted and all interested parties served with process and all defenses heard, leaving only the question of just compensation due each respondent to be determined in a separate inquiry. Condemnation under the power of eminent domain is a proceeding in rem — against the property. 18 Am. Jur., § 112, p. 738. Each owner is entitled to defend upon the ground his property does not qualify for the purpose intended, or that its selection was the result of arbitrary or capricious conduct on the part of the taking agency. The case of *North Carolina ex rel Transportation Advisory Commission v. Wilmington-Wrightsville Beach Causeway Company, Tidewater Power Company, Shore Acres Company, Pennsylvania Company, et al*, 199 N.C. 169, 154 S.E. 74, is authority for a single condemnation proceeding against property belonging to different individuals.

"Where it is sought to condemn several tracts of land belonging to different owners, all the owners may be joined in one proceeding, in the absence of any statutory provision to the contrary. Such a course is convenient, and can injure no one if damages are separately assessed to each owner." 29 C.J.S., § 236, p. 1204. "In Virginia, there being no statute requiring a separate proceeding as to each landowner, several owners of land sought to be condemned may be convened in one proceeding." *City of Richmond v. Dervishian*, 190 Va. 398, 57 S.E. 2d 120. See also, *Dexter & N. R. Co. v. Foster*, 203 N.Y. 637, 97 N.E. 1103; *City of Houston v. Culmore*, 154 Tex. 376, 278 S.W. 2d 825.

In *Rudacille v. State Commission*, 155 Va. 808, 156 S.E. 829, the Supreme Court of Appeals sustained a single condemnation proceed-

ing involving the property of many owners within the Shenandoah National Park area: "It is next said that the landowners affected should not be convened in one proceeding. It appears that there are something like two thousand of them living within the proposed park area. Individual petitions would be needlessly expensive and would serve no good purpose. All that can be asked is that there be in each case a separate assessment of damages."

If, however, the petitioner elects to institute a separate and distinct proceeding for each parcel of land taken, it must, in each instance, allege all the facts necessary to justify the taking.

The petitions in these proceedings were fatally defective. The respondents were permitted to file demurrers *ore tenus* challenging the sufficiency of the petitions. Even without the demurrers, it would be our duty *ex mero motu* to take notice of the defects which appear upon the face of the records. *Skinner v. Transformadora, S.A.,* 252 N.C. 320, 113 S.E. 2d 717; *Woody v. Pickelsimer,* 248 N.C. 599, 104 S.E. 2d 273; *Fuquay Springs v. Rowland,* 239 N.C. 299, 79 S.E. 2d 774.

The judgment of the superior court is

Reversed.