W. W. HORTON, A. G. WHITENER, WHITENER REALTY CO., INC., WOODWORKERS SUPPLY CO., INC., ET AL., ON BEHALF OF THEMSELVES AND ALL OTHER TAXPAYERS OF THE CITY OF HIGH POINT v. REDEVELOPMENT COMMISSION OF HIGH POINT, P. HUNTER DALTON, JR., JAMES H. MILLIS, FRED W. ALEXANDER, DALE C. MONTGOMERY, CLARENCE E. YOKELEY, AND CITY OF HIGH POINT, A MUNICIPAL CORPORATION, CARSON C. STOUT, MAYOR, ARTHUR G. CORPENING, JR., ROY B. CULLER, R. D. DAVIS, J. H. FROELICH, H. G. ILDERTON, B. G. LEONARD, F. D. MEHAM, LYNWOOD SMITH.

(Filed 14 June 1963.)

**1. Pleadings § 12—**

A pleading will be liberally construed upon demurrer and the demurrer admits for the purpose of testing the sufficiency of the pleading the truth of the factual averments well stated and relevant inferences of fact reasonably deductible therefrom, but it does not admit inferences or conclusions of law.

**2. Taxation § 6—**

What is a necessary expense within the meaning of Article VII, § 7, of the State Constitution is a question of law for the courts.

**3. Same—**

Necessary expenses of a municipality within the purview of Article VII, § 7, of the State Constitution are expenses incurred by a municipality in the maintenance of the public peace, the administration of justice, and the discharge of functions of a governmental nature in the exercise of a portion of the State's delegated sovereignty.

**4. Same;    Municipal Corporations § 4—**

An urban redevelopment plan is not a necessary expense of a municipality within the meaning of Article VII, § 7, of the State Constitution, and therefore a municipality may be enjoined from spending *ad valorem* taxes or levying taxes and issuing bonds for an urban redevelopment project until and unless such project is approved by a majority of the qualified voters of such municipality, and any provisions of G.S. 160-466 (d) and G.S. 160-470 authorizing a municipality to levy taxes and issue bonds for such purpose without a vote are unconstitutional. G.S. 160-463.

**5. Constitutional Law § 10—**

A statute which is repugnant to a provision of the Constitution is void.

**6. Constitutional Law § 7;    Municipal Corporations § 4—**

The Urban Redevelopment Law is a constitutional delegation of power by the State to municipal corportions. Constitution of North Carolina, Article II, § 1.

APPEAL by plaintiffs from *Walker, S.J.*, 7 January 1963 Regular Civil Session of Guilford—High Point Division.

Civil action brought by plaintiffs, all taxpayers of the city of High Point, in behalf of themselves and all other taxpayers of said city adversely and directly affected, against the city of High Point, a municipal corporation, its mayor, the members of the City Council, the Redevelopment Commission of High Point, a North Carolina corporation, and its members, for the purpose of permanently restraining the defendants from contracting any debt, pledging their faith or loaning their credit, or levying any taxes or collecting any taxes by any officers of the same for the purpose of proceeding with, or using money derived from such sources for, a redevelopment plan for the city of High Point, known as East Central Urban Renewal Area, Project No. N.C. R-23, until and unless such plan is approved by a majority vote of those qualified voters of the city of High Point, who shall vote thereon in an election held for the purpose, heard upon a demurrer to an amended complaint.

From a judgment sustaining a demurrer to the amended complaint, filed by all the defendants, except F. D. Mehan, a member of the City Council, and dismissing the action as to all defendants, except F. D. Mehan, and that the demurring defendants recover of plaintiffs their costs, plaintiffs appeal.

*Harriss H. Jarrell for plaintiff appellants.*

*Knox Walker and Haworth, Riggs, Kuhn and Haworth by John Haworth for defendant appellees.*

PARKER, J. This is a summary of the crucial allegations of the amended complaint, necessary for a decision of this appeal:

The City Council of the city of High Point enacted an ordinance approving the creation of the Redevelopment Commission of High Point. Thereafter, a certificate of incorporation was issued by the Secretary of State of North Carolina for the Redevelopment Commission of High Point, in which its members were named.

This Redevelopment Commission has prepared and caused to be prepared a redevelopment plan for East Central Urban Renewal Area, Project No. N.C. R-23, which has been approved and adopted by the City Council of the city of High Point.

The City Council of the city of High Point did not have in existence a legal plan or method of financing the acquisition of the renewal area in the urban renewal plan, Project No. N.C. R-23, at the time of approving said plan as required by G.S. 160-463, and has no legal plan now for financing the project.

The plan, as approved, is too broad in scope to qualify as slum clearance, in that the plan includes the construction of a million dollar

pedestrian plaza, and some of the city of High Point's best commercial and business districts, namely, East High Street, South Wrenn
Street, and East Commerce Street.

The City Council of the city of High Point has agreed that the city
of High Point will provide an amount in cash, streets, utilities, etc.,
which will not be less than one-third of the net cost of this redevelopment plan, and the city of High Point has paid the salary of the
Urban Renewal Director out of *ad valorem* tax money.

In pursuance of this plan, the Redevelopment Commission of High
Point is proceeding with the plan, and that *ad valorem* tax monies
have been spent, and will be spent in carrying out this plan, and that
this plan cannot be finished without the expenditure of substantial
sums of money. That the expenditure of this money derived from
taxation, spent and to be spent, for carrying out the purpose of this
plan is not a necessary expense of the city of High Point within the
purview of Article VII, section 7, of the North Carolina Constitution.
That no vote by the citizens of High Point has been had on the
question of expending money derived by taxation for putting this plan
into effect. To carry out this plan will require the city of High Point,
and its agencies, to levy taxes and issue bonds, and that to do this to
carry out this plan without the approval of the majority of those who
shall vote in an election held for such purpose contravenes Article VII,
section 7, and Article V, sections 3 and 4, of the North Carolina
Constitution.

G.S. 160-466 (d) and 160-470 contravene Article VII, section 7, of
the North Carolina Constitution. There is an unlawful delegation of
authority by the General Assembly to the Redevelopment Commission
of High Point in violation of Article II, section 1, of the North Carolina Constitution.

The City of High Point, and its agencies, are contracting debts,
pledging its faith, lending its credit, levying *ad valorem* taxes, and
spending *ad valorem* tax money for the consummation of this redevelopment plan, even though the expense of carrying into effect this
plan is not a necessary expense of the city of High Point. The city of
High Point has appropriated $5,000 in *ad valorem* tax monies for
urban renewal purposes.

G.S. 1-151 requires us to construe liberally a pleading challenged
by a demurrer with a view to substantial justice between the parties.
The demurrer to the amended complaint admits, for the purpose of
testing the sufficiency of the pleading, the truth of factual averments
well stated and relevant inferences of fact reasonably deductible therefrom. But it does not admit inferences or conclusions of law asserted by

the pleader. *Little v. Oil Corp.*, 249 N.C. 773, 107 S.E. 2d 729; *Hedrick v. Graham*, 245 N.C. 249, 96 S.E. 2d 129; Strong's N. C. Index, Vol. 3, Pleadings, pp. 625-627.

The demurrer admits, for the purpose of challenging the sufficiency of the amended complaint, allegations of fact therein alleged to this effect: The City of High Point, and its agency the Redevelopment Commission of High Point, have prepared or caused to be prepared a far-reaching urban renewal project requiring the expenditure of large sums of money in that the project or plan includes the construction of a million dollar pedestrian plaza, and also includes in the project some of the city's best commercial and business districts on East High Street, South Wrenn Street, and East Commerce Street. The City Council of the city of High Point has agreed that the city of High Point will provide an amount in cash, streets, utilities, etc., which will not be less than one-third of the net cost of this redevelopment plan. These allegations of fact permit the reasonable inference that the total cost of completing East Central Urban Renewal Area, Project No. N.C. R-23, will amount to several millions of dollars. The city of High Point has paid the salary of the Urban Renewal Director out of *ad valorem* tax money, and has appropriated $5,000 in *ad valorem* tax monies for urban renewal purposes. The city of High Point, and its agencies, are contracting debts, pledging its faith, lending its credit, levying *ad valorem* taxes, and spending *ad valorem* tax money for the consummation of this redevelopment plan. No vote has been had on the question of expending money derived by taxation for putting this plan into effect, or for the city's contracting debts, pledging its faith and lending its credit, and levying taxes for putting this plan into effect.

Article VII, section 7, of the North Carolina Constitution reads:

> "No county, city, town, or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless approved by a majority of those who shall vote thereon in any election held for such purpose."

The necessity of a rigid observance of this constitutional provision has been pointed out and reiterated in our decisions, and emphasized by G.S. 160-62, which reads:

> "No county, city, town, or other municipal corporation shall contract any debt, pledge its faith, or loan its credit, nor shall any tax be levied, or collected by any officer of the same, except for

the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."

This Court in *Redevelopment Commission v. Bank,* 252 N.C. 595, 114 S.E. 2d 688, has determined that lands acquired for the purposes and in the manner set forth in G.S. Chapter 160, Subchapter VII, Article 37, Urban Redevelopment Law, meet the public purpose test. To the same effect, *Redevelopment Commission v. Hagins,* 258 N.C. 220, 128 S.E. 2d 391. The question of whether such an acquisition is for a *necessary* purpose relating to some phase of municipal government so as to enable a municipality to carry on the work for which it was organized and given a portion of the State's sovereignty, and necessitating the ordinary and usual expenditures reasonably required to enable a municipality to perform its duties as a part of the State Government was expressly reserved for determination in the *Hagins* case. See also the concurring opinion by *Bobbitt, J.,* in the *Bank* case.

"Our decisions uniformly hold that what are necessary expenses for a municipal corporation for which it may contract a debt, pledge its faith, or loan its credit and levy a tax without an approving vote of a majority of those who shall vote thereon in an election held for such purpose, is a question for the Court." *Wilson v. High Point,* 238 N.C. 14, 20, 76 S.E. 2d 546, 550.

In *Henderson v. Wilmington,* 191 N.C. 269, 277, 132 S.E. 25, 29, the Court held that the acquisition of free wharves and terminals that may be of advantage to the city's local business interests was not a necessary governmental expense, and without the approval of its voters the city is inhibited by Article VII, section 7, of the State Constitution from issuing bonds for such acquisition. In its opinion, the Court said:

"In defining 'necessary expense' we derive practically no aid from the cases decided in other States. We have examined a large number of such cases apparently related to the subject and in each one we have found some fact or feature or constitutional or statutory provision antagonistic to or at variance with the section under consideration. We must rely upon our own decisions."

At page 278 the Court further said: "The cases declaring certain expenses to have been 'necessary' refer to some phase of municipal government. This Court, so far as we are advised, has given no decision to the contrary."

In *Jones v. Commissioners,* 137 N.C. 579, 599, 50 S.E. 291, 298, Hoke, J., gives the following definition of necessary expenses: "They involve and include the support of the aged and infirm, the laying out

and repair of public highways, the construction of bridges, the mainte-
nance of the public peace, and administration of public justice—ex-
penses to enable the county to carry on the work for which it was
organized and given a portion of the State's sovereignty." In a subse-
quent decision the same learned judge observes that the term "neces-
sary expense" more especially refers "to the ordinary and usual ex-
penditures reasonably required to enable a county to properly perform
its duties as part of the State Government." *Keith v. Lockhart,* 171
N.C. 451, 456, 88 S.E. 640, 642. This feature is again stressed in
*Ketchie v. Hedrick,* 186 N.C. 392, 119 S.E. 767, in which Clark, C.J.,
delivering the opinion of the unanimous Court said: "But all these
cases extending the meaning of the words, 'necessary expenses,' were
due to the enlarged scope of governmental expenses, causing a broader
vision and a very proper growth in the recognized needs and require-
ments of municipal government. They were not based upon any idea
that 'necessary expenses' would take in matters which were not requir-
ed as necessary governmental expenses." In *Green v. Kitchin,* 229 N.C.
450, 457, 50 S.E. 2d 545, 550, Ervin, J., speaking for a majority of
the Court said: "This Court has uniformly held that where the pur-
pose for which a proposed expense is to be incurred by a municipality
is the maintenance of public peace or administration of justice, or par-
takes of a governmental nature, or purports to be an exercise by the
municipality of a portion of the State's delegated sovereignty, the
expense is a necessary expense within the Constitution, and may be in-
curred without a vote of the people."

Approved as "necessary expenses" for a municipal corporation with-
in the purview of Article VII, section 7, of the State Constitution have
been the following: Repairing, maintaining and paving public streets,
*Jones v. New Bern,* 152 N.C. 64, 67 S.E. 173; providing a city with
a waterworks plant, a sewerage system, and for grading and paving its
streets, *Greensboro v. Scott,* 138 N.C. 181, 50 S.E. 589; *Bradshaw v.
High Point,* 151 N.C. 517, 66 S.E. 601; a market house, *Swinson v.
Mount Olive,* 147 N.C. 611, 61 S.E. 569; a municipal building, *High-
tower v. Raleigh,* 150 N.C. 569, 65 S.E. 279; a municipal power plant,
*Williamson v. High Point,* 213 N.C. 96, 195 S.E. 90; special training of
a policeman, *Green v. Kitchin, supra.* For a list of many more cases
to the same effect see G.S. Vol. 4A, pp. 105-106 of an annotation to
Article VII, section 7, of the State Constitution; and also 18 N.C.
L.R. p. 93 *et seq.*

The following have been held not as "necessary expenses" within
the purview of Article VII, section 7, of the State Constitution: a
swimming pool, *Greensboro v. Smith,* 239 N.C. 138, 79 S.E. 2d 486;

municipal parks and recreational facilities, *Purser v. Ledbetter,* 227 N.C. 1, 40 S.E. 2d 702; support and maintenance of James Walker Memorial Hospital, *Board of Managers v. Wilmington,* 237 N.C. 179, 74 S.E. 2d 749; a hospital, *Sessions v. Columbus County,* 214 N.C. 634, 200 S.E. 418; *Palmer v. Haywood County,* 212 N.C. 284, 193 S.E. 668; *Burleson v. Board of Aldermen,* 200 N.C. 30, 156 S.E. 241; *Nash v. Monroe,* 198 N.C. 306, 151 S.E. 634; a public library, *Westbrook v. Southern Pines,* 215 N.C. 20, 1 S.E. 2d 95; *Jamison v. Charlotte,* 239 N.C. 682, 80 S.E. 2d 904; an airport, *Airport Authority v. Johnson,* 226 N.C. 1, 36 S.E. 2d 803; a chamber of commerce, *Ketchie v. Hedrick, supra;* a drill tower for firemen, *Wilson v. Charlotte,* 206 N.C. 856, 175 S.E. 306. See also, *Wilson v. High Point, supra.*

The ultimate result, which our Urban Redevelopment Law, G.S. 160-454 *et seq.,* seeks to achieve, is to eliminate the injurious consequences caused by a blighted area in a municipality and to substitute for them a use of the area which it is hoped will render impossible future blight and its injurious consequences. This is in its broad purpose a preventive measure. As the Court said in *Redevelopment Commission v. Bank, supra:* "It may be that the measure [urban redevelopment project] may prove eventually to be a disappointment, and is ill advised, but the wisdom of the enactment is a legislative and not a judicial question." In our opinion, and we so hold, the expenses incurred, or to be incurred, by a municipality in putting into effect an urban redevelopment plan, pursuant to the authority vested in it by our Urban Redevelopment Law, are not expenses incurred, or to be incurred, by a municipality in the maintenance of public peace or administration of justice, do not partake of a governmental nature, and do not purport to be an exercise by a municipality of a portion of the State's delegated sovereignty, and consequently are not "necessary expenses" within the purview of Article VII, section 7, of the North Carolina Constitution. Any provisions of G.S. 160-466 (d) and 160-470 to the effect that bonds may be sold and issued by a redevelopment commission for the purpose of carrying out the provisions of an urban redevelopment plan or project under the provisions of our Urban Redevelopment Law, or that any municipality located within the area of such a commission may appropriate funds to a redevelopment commission for the the purpose of aiding such a commission in carrying out any of its powers and functions under our Urban Redevelopment Law, and to obtain funds for this purpose, the municipality may levy taxes, and may in the manner prescribed by law issue and sell its bonds, without the approval of a vote of the qualified voters in the municipality, are repugnant to the provisions of Article VII, section 7, of the

North Carolina Constitution. "Statutory requirements, in all events, must be made to square with the provisions of the organic law, or else disregarded." *Sessions v. Columbus County, supra.* The trial court erred in sustaining the demurrer to the amended complaint.

The amended complaint alleges there is an unlawful delegation of authority by the General Assembly to the Redevelopment Commission of High Point in violation of Article II, section 1, of the North Carolina Constitution. In *Redevelopment Commission v. Bank, supra,* the Court affirmed the constitutionality of our Urban Redevelopment Law. In this case the Court said: "In our opinion, and we so hold, the Urban Redevelopment Law does not confer any illegal delegation of legislative power upon petitioners in violation of Article II, section 1, of the North Carolina Constitution, as contended by respondent."

In our opinion the allegations in the amended complaint to the effect that the City Council of the city of High Point did not have in existence a legal plan or method of financing the acquisition of the renewal area in the urban renewal plan, Project No. N.C. R-23, at the time of approving said plan as required by G.S. 160-463, and has no legal plan now for financing the project, are conclusions of law. For the necessity of having such a plan in order to proceed with the project, see *Redevelopment Commission v. Hagins, supra.*

The order of the lower court sustaining the demurrer to the amended complaint is

Reversed.