E. D. KUYKENDALL, JR., ADMINISTRATOR OF THE ESTATE OF PATTIE B. RIDDICK, DECEASED, PLAINTIFF, ·V. MRS. DELIA M. ZIMMERMAN PROCTOR, INDIVIDUALLY, AND MRS. DELIA M. ZIMMERMAN PROCTOR, GUARDIAN OF THE ESTATE OF MRS. PATTIE B. RIDDICK, INCOMPETENT, AND MRS. DELIA M. ZIMMERMAN PROCTOR, SUCCESSOR TRUSTEE UNDER A TRUST INDENTURE EXECUTED BY LUCY W. BALL ON NOVEMBER 15, 1929, RECORDED IN DEED BOOK 101, PAGE 69, OFFICE OF THE REGISTER OF DEEDS OF DURHAM COUNTY, NORTH CAROLINA, AND DEED BOOK 1747. PAGE 534, OFFICE OF THE REGISTER OF DEEDS OF GUILFORD COUNTY, NORTH CAROLINA, FOR THE USE AND BENEFIT OF MRS. PATTIE B. RIDDICK, ET AL., DEFENDANTS.

(Filed 20 June, 1967.)

1. **Pleadings § 19—**

A demurrer for failure of the complaint to state a cause of action admits for the purpose of testing the complaint all facts well pleaded in the complaint and appearing in any document attached thereto, together with all reasonable inferences therefrom, but it does not admit conclusions of law.

2. **Same—**

General allegations that defendant did things not authorized by law, without specifying the particular acts complained of, constitute a mere conclusion not admitted by demurrer.

3. **Same—**

A demurrer for failure of the complaint to state a cause of action must be overruled when facts properly alleged in the complaint, together with inferences of fact reasonably deducible therefrom, entitle plaintiff to judgment granting any relief.

4. **Guardian and Ward § 10;   Insane Persons § 4—**

A guardian may not be held liable for use of funds of the estate to provide necessities of life for the incompetent, even though some other person is under legal duty to provide support for the incompetent, but the guardian is required to collect such funds from the third person and may be held liable to the incompetent's estate for the amount the estate of the

incompetent is reduced by the failure to collect such funds, plus interest. G.S. 33-20.

**5. Same—**

Where a third person is under legal duty to provide funds for the support of an incompetent, which would have provided for the reasonable comfort of the incompetent, and the guardian fails to collect such funds, and is able to provide the incompetent only with the bare necessities of life from the incompetent's own estate, *held,* upon the death of the incompetent, her estate may hold the guardian liable for the wrong done the incompetent in failing to provide the incompetent with reasonable comforts above the bare necessities of life.

**6. Abatement and Revival § 14—**

The trustee of an incompetent failed to collect sums due from a third person for the support of the incompetent, and, as a result, was able to furnish the incompetent with the bare necessities of life only, instead of reasonable comforts under the circumstances. *Held:* Upon the death of the incompetent, the right of action for the amount by which the incompetent's estate was decreased by failure to collect such funds, and the right of action for the wrong done the incompetent in failing to provide her with reasonable comforts, survive to the incompetent's personal representative. G.S. 28-172; G.S. 28-175(3).

**7. Trusts § 8— Provision that trustee should provide reasonable comforts to life beneficiary held mandatory.**

Defendant was trustee of a trust indenture and the guardian of an incompetent life beneficiary of the trust. The trust provided that the trustee should use the rents and profits from certain trust property, or so much thereof as might be necessary, to keep the life beneficiary in comfort. *Held:* The requirement that the rents and profits be used to keep the life beneficiary in comfort is mandatory and not permissive, and the trustee is not relieved of the duty to use the funds by reason of the fact that the life beneficiary had other properties, and upon the death of the life beneficiary the administrator of her estate may recover from the trustee the amount by which the estate of the life tenant was lessened by the failure of the trustee to perform her duty to use the sums reasonably required, not in excess of the trust income, and for damages for failure of the trustee to provide support of the beneficiary in keeping with her age, condition and circumstances.

**8. Trusts § 6—**

A court of equity will always compel a trustee to exercise a mandatory power and will control his exercise of a discretionary power when it is shown that he has exercised such discretionary power dishonestly or from other improper motives.

**9. Limitation of Actions § 16—**

The question of the bar of the statute of limitations may not ordinarily be raised by a demurrer for failure of the complaint to state a cause of action.

APPEAL by plaintiff from *Armstrong, J.,* at the 21 November 1966 Session of GUILFORD.

The defendant, in her several capacities as individual, guardian and successor trustee, filed demurrers *ore tenus* to the complaint on the ground that it does not allege facts sufficient to constitute a cause of action and that the plaintiff is not the real party in interest. From a judgment sustaining the demurrers and dismissing the action, the plaintiff appeals.

Attached to and made a part of the complaint is the "Lucy W. Ball Trust Indenture," executed 15 November 1929, by which Mrs. Ball conveyed to M. W. Ball, Trustee, certain properties. A part of the properties were to be held for the use of the settlor for life. The remaining properties were to be divided into four shares, one of which the trustee was to hold for the benefit of Mrs. Pattie B. Riddick, the settlor's daughter, for life, the provisions of the indenture as to that share being:

> "[A] one fourth (¼) interest of the remainder to Mrs. Pattie B. Riddick for life to be held in trust by the said trustee for her use and benefit and the said Trustee is to manage said one fourth (¼) for the said Mrs. Pattie B. Riddick and use the rents and profits therefrom or so much thereof as may be necessary to keep her in comfort and at her death all of said one fourth (¼), together with any accumulated rents or profits thereon shall be conveyed in fee simple by said Trustee as follows: to wit: a one third (⅓) interest of the same to M. W. Ball; a one third (⅓) interest of the same to the children of my deceased daughter, Mrs. E. L. Miller, share and share alike and a one third (⅓) interest of the same to be added to the trust fund herein created for Mrs. W. T. Spencer and her children * * *."

The essence of the complaint, in addition to the provisions of the above trust indenture, is:

The plaintiff is the duly appointed and acting administrator of the estate of Mrs. Riddick.

On 1 February 1936, the defendant, Mrs. Proctor, was duly appointed guardian of the estate of Mrs. Riddick, an incompetent. Mrs. Riddick owned a life estate in certain valuable properties. As guardian, Mrs. Proctor received the income from these until the death of Mrs. Riddick.

By judgment entered in January 1938, Mrs. Proctor was appointed successor trustee under the Lucy W. Ball trust indenture and succeeded, as trustee, to the trust properties.

Both the properties held by Mrs. Proctor as guardian for Mrs. Riddick and the properties held by her as trustee for Mrs. Riddick, these being separate and distinct, produced income amounting to

"thousands of dollars" each year. Both as guardian and as trustee, Mrs. Proctor filed annual accounts with the clerk of the superior court. She kept the two funds and the receipts therefrom separate.

As one of the children of Mrs. E. L. Miller, Mrs. Proctor owned a vested remainder interest in the properties held by her as trustee. Consequently, she had a personal interest in the conservation and improvement of the corpus thereof and in the accumulation in her hands of rents and profits derived therefrom.

As guardian, Mrs Proctor spent all of the net income derived from the properties held by her as such guardian in providing for Mrs. Riddick "the bare necessities of life" and in doing "other things not authorized by the laws of North Carolina in the management of a fiduciary estate."

As trustee, Mrs. Proctor failed and refused to apply the rents and profits from the properties held by her as trustee for the purpose of providing Mrs. Riddick "with the comforts befitting her station in life during her lifetime, with the fixed intent and purpose of enhancing the value of the trust estate available for distribution among the remaindermen," including Mrs. Proctor, individually, upon the death of Mrs. Riddick.

As guardian, Mrs. Proctor failed to preserve and accumulate the income received by her from the properties held by her as guardian.

In consequence of such acts and omissions by Mrs. Proctor, as guardian, all of the income received by her, as guardian, was expended so that at the death of Mrs. Riddick there were no assets held by Mrs. Proctor, as guardian.

As trustee, Mrs. Proctor "failed in the performance of the duties owed by her to Pattie B. Riddick, the life beneficiary of the trust estate * * * and fraudulently and wrongfully accumulated in her hands as Successor Trustee the trust estate rents and profits and other income which should have been used * * * to provide for Mrs. Pattie B. Riddick the comforts befitting her station in life during her lifetime."

As guardian, Mrs. Proctor "failed in the performance of the duties owned by her to her ward, and mismanaged the properties owned by Pattie B. Riddick, incompetent, for her life, and mismanaged, misapplied, misappropriated, and fraudulently and wrongfully expended the rents, profits, and other income derived from said properties owned by Pattie B. Riddick, incompetent, for life," in that: She failed to require herself, as trustee, to expend from the income of the trust estate the amounts necessary to provide Mrs. Riddick with "the comforts befitting her station in life during her lifetime"; she spent and exhausted the income derived by her, as guardian, "in

providing the bare necessities of life" for Mrs. Riddick; she failed to require herself, as trustee, to reimburse herself, as guardian, for the amounts spent by her, as guardian, "in providing the necessities and comforts of life for Mrs. Riddick"; and she failed to hold, reserve, and accumulate and invest the net income received by her, as guardian, from the properties owned by Mrs. Riddick for her life.

By reason of the said acts and omissions of Mrs. Proctor, as guardian and as trustee, the plaintiff administrator has been damaged in excess of $150,000, which amount he is entitled to recover from Mrs. Proctor, individually.

Mrs. Proctor, as trustee, has, since the death of Mrs. Riddick, distributed to herself and others accumulated income of the trust estate in excess of $100,000, which should have been in the estate of Mrs. Riddick, for which amount Mrs. Proctor, individually, is liable to the plaintiff administrator.

The prayer of the complaint is: That Mrs. Proctor be required to render to the plaintiff an accounting of all rents, profits and other income received and all disbursements made by Mrs. Proctor, as trustee, and by Mrs. Proctor, as guardian; that the plaintiff recover of Mrs. Proctor, as trustee, as guardian, and individually all assets of the estate of Mrs. Riddick which are or should be in the custody of Mrs. Proctor in any of her said capacities; that the plaintiff recover of Mrs. Proctor, individually, all sums owing by her in any of her said capacities to the plaintiff; that the court appoint a competent person to audit the records and accounts of Mrs. Proctor, as trustee, and of Mrs. Proctor, as guardian.

*Wharton, Ivey & Wharton and Watkins & Jarvis for plaintiff.*
*Claude V. Jones for defendant.*

LAKE, J. In determining the sufficiency of a complaint to withstand a demurrer filed on the ground that it does not state facts sufficient to constitute a cause of action, all facts well pleaded in the complaint, including inferences of fact reasonably deduced therefrom and the provisions of any document attached to and made a part of the complaint, are deemed admitted by the demurrer, but conclusions of the pleader as to the proper construction of such instrument are not admitted by the demurrer and are not binding upon the court. *Gay v. Thompson,* 266 N.C. 394, 146 S.E. 2d 425; *McLeod v. McLeod,* 266 N.C. 144, 146 S.E. 2d 65; *Horton v. Redevelopment Commission,* 259 N.C. 605, 131 S.E. 2d 464; *McCallum v. Insurance Co.,* 259 N.C. 573, 131 S.E. 2d 435.

General allegations of wrongdoing, which do not specify the al-

leged wrongful act or omission, such as the allegation that the defendant "did other things not authorized by the laws of North Carolina in the management of a fiduciary estate," are mere conclusions of law. These must be disregarded in determining the sufficiency of the pleading attacked by the demurrer. The question is, Assuming the facts to be as alleged in the complaint, together with the inferences reasonably to be drawn therefrom, and no others, is the plaintiff entitled to a judgment granting some relief? If so, it was error to sustain the demurrers.

The guardian of the estate of an incompetent person, who has no other adequate means or source of support, is authorized, if not required, to use, for the support of the ward in keeping with his or her age, condition and station in life, so much of the income from the ward's properties as is reasonably required for such purpose. See: *Casualty Co. v. Lawing*, 225 N.C. 103, 33 S.E. 2d 609; *Long v. Norcom*, 37 N.C. 354; 39 C.J.S., Guardian and Ward, § 62; 25 Am. Jur., Guardian and Ward, §§ 68 and 69. Consequently, the guardian cannot be held liable to the ward, or the ward's estate after the termination of the guardianship, for such expenditures, nothing else appearing.

It is alleged in the complaint that the expenditures by Mrs. Proctor, as guardian, of the income of her ward's estate provided for the ward only the "bare necessities of life." Assuming that some other person was under a legal duty to provide such support for the ward but failed and refused to do so, it would not be a violation of a guardian's duty to use income from the ward's property in order to provide the bare necessities of life pending efforts by the guardian to persuade or compel such other person to perform his duty. The law does not require the guardian to allow the ward to starve while the guardian litigates the ward's right to support by another. Thus, the application by Mrs. Proctor, as guardian, of the income of her ward's property to the support of the ward would not, of itself, make Mrs. Proctor, as guardian, liable to the ward or to the ward's administrator.

It is, however, also the duty of the guardian to preserve the estate of the ward and to take practicable action to enforce the ward's rights against others. *Stewart v. McDade*, 256 N.C. 630, 124 S.E. 2d 822. G.S. 33-20 provides, "Every guardian *shall* take possession, for the use of the ward, of *all* his estate, and *may* bring *all* necessary actions therefor." (Emphasis added.) As stated by Settle, J., speaking for the Court, in *Armfield v. Brown*, 73 N.C. 81: "A guardian is liable not only for what he receives, but for all he ought to have received of his ward's estate. And while infallible judgment is not ex-

pected of him in the management of his ward's estate, yet ordinary diligence and the highest degree of good faith is expected and required of him in the execution of his trust." It is the duty of a guardian of the estate of an incompetent person to exercise due diligence in the collection of an obligation owing to the ward. The guardian is liable to the ward's estate for any loss to it by his failure to do so. *Coggins v. Flythe,* 113 N.C. 102, 18 S.E. 96; 39 C.J.S., Guardian and Ward, § 78. When the guardianship is terminated by the death of the ward, the right to compel the guardian to pay over the money of the ward then in his hands, or which ought then to be in his hands, passes to the administrator of the ward. *Lowder v. Hathcock,* 150 N.C. 438, 64 S.E. 194.

In *Culp v. Lee,* 109 N.C. 675, 14 S.E. 74, a guardian was sued for having accepted from the executor of an estate a smaller amount than should have been distributed to his wards. Clark, J., later C.J., speaking for the Court, said, "If the guardian received for his wards a less sum than they were entitled to receive, it is true they can sue the guardian and his sureties for his default, but they have their election to sue either the guardian or the executor from whom he insufficiently collected the fund devised to them or both." Again, in *Luton v. Wilcox,* 83 N.C. 21, where a guardian was charged with having accepted in settlement of a bond due the ward a sum less than its face amount, Dillard, J., speaking for the Court, said, "The rule of diligence established by the decided cases is, that a guardian in the management of his ward's estate must act in good faith and with that care and judgment that a man of ordinary prudence exercises in his own affairs."

In *Clodfelter v. Bost,* 70 N.C. 733, the plaintiff, after becoming of age, sued his former guardian for the negligent failure to collect from the United States Government a pension, payable under the law for the benefit of the plaintiff by reason of the death of his father from wounds received in the Mexican War, such pension being no longer recoverable by the plaintiff from the government at the time of the institution of the action. In holding the guardian liable, the Court, speaking through Bynum, J., said:

> "Thus he knew that his ward's father had been killed as a soldier in Mexico and that the plaintiff was his only child and heir at law. It was therefore his duty to enquire and ascertain whether the father owned any estate or rights of property which would fall to his ward. Such an enquiry would probably have led him to a knowledge of this right of pension. But he made no enquiries and appears to have lost sight of his ward and of his trust.

"We conclude that all the facts which were within his knowledge were sufficient to put the defendant upon the enquiry as to the pension, and this, added to his negligence in the matters before referred to, properly subject the defendant to the payment of the pension money lost by his default."

If Mrs. Proctor, as guardian, paid out money belonging to her ward's estate for the support of her ward when it was the legal right of the ward to require some other person to support her, it would then be the right and duty of the guardian to obtain reimbursement from the person so liable for the ward's support. It would, of course, be no less the duty of Mrs. Proctor, as guardian, to seek such reimbursement where she, herself, as trustee, was the person under a duty to support the ward.

This Court has held that where a father of a minor child is financially able to support the child, the father, as guardian of the child's estate, may not claim credit in his accounts for expenditures of the funds of the child for his or her support. Burke v. Turner, 85 N.C. 500; 39 C.J.S., Guardian and Ward, § 62d(3). There, the liability of the guardian was not for damages arising from the difference in quality of the support which the guardian supplied to the ward and that which the ward might have had if the person primarily liable had done his duty. The guardian's liability in that case was for diminution of the ward's estate resulting from the guardian's expenditure of the ward's funds and his failure to obtain reimbursement from the person liable for the support.

If this guardianship had terminated during the life of the ward, the ward could undoubtedly have sued the guardian for the recovery of assets which the guardian would have then had in possession if the guardian had diligently preserved the estate and had collected reimbursement from the person liable for the ward's support. Upon the death of the ward, this right would pass to the ward's administrator. The right of the ward to sue the guardian for lack of diligence in the care of the estate survives to the administrator. G.S. 28-172. The action being for the recovery of money due the administrator from the guardian, it is not one for relief which could not be enjoyed, or the granting of which would be nugatory after death, so as to fall within the class specified in G.S. 28-175(3).

Obviously, the estate in the hands of Mrs. Proctor, as guardian, for transfer to the plaintiff administrator at the death of Mrs. Riddick, could not have been enhanced by use of the income of the Ball Trust to keep Mrs. Riddick in more "comfort" than she enjoyed from the use of the funds of the guardianship estate. By hypothesis, the trust income so used by the trustee would have been

spent or consumed before Mrs. Riddick died. Thus, on the theory that it was the guardian's duty to obtain from the trustee reimbursement of the guardianship estate, the plaintiff's recovery from Mrs. Proctor, as guardian, could not exceed the total of the guardianship funds actually used by Mrs. Proctor, as guardian, for Mrs. Riddick's support, plus interest. The complaint alleges these were sufficient to supply only the "bare necessities of life."

However, it is the duty of the guardian of the estate of an incompetent to collect, insofar as practicable, all monies due the ward, including damages for wrongs done to the ward which are known to the guardian. To be sure, one cannot be made comfortable retroactively, but one can be presently compensated for comforts wrongfully withheld in the past. If Mrs. Riddick was entitled to be kept "in comfort" by the trustee, it was a wrong done her by the trustee for the trustee to deny her the difference between the "bare necessities of life," supplied by the guardian, and the "comfort" to which she was entitled under the trust.

Surely, had Mrs. Riddick been *sui juris,* she could have recovered damages from the trustee for an accomplished denial of her right under the trust indenture. If her guardian knew of such right of action in the ward, the guardian was under a duty to enforce it, collect the damages due the ward for "comfort" wrongfully withheld in the past and add the sum so collected to the guardianship estate. Had the guardian done so, the estate in the guardian's hands at the death of the ward, then payable over to the plaintiff administrator, would have been enhanced beyond its mere reimbursement for the guardianship funds used to supply the ward with the "bare necessities of life."

The complaint alleges, and the demurrer admits for present purposes, that the guardian not only knew of this wrongdoing by the trustee, she, herself, being also the trustee, but brought it about and participated in it for the purpose of deriving, as remainderman of the trust properties, a personal gain thereby. Such conduct is not compatible with the duty of a guardian of an incompetent's estate to use due diligence to collect and preserve for the ward's benefit all sums due the ward from others.

Thus, had the guardianship terminated during the life of Mrs. Riddick, she, upon the allegations of this complaint, admitted by the demurrer for present purposes, would have had a right to recover from Mrs. Proctor, as guardian, the damages which Mrs. Proctor, as guardian, was under a duty to collect from the trustee and wilfully failed to collect. This right also survived the death of Mrs. Riddick and passed to the plaintiff administrator.

We must, therefore, determine whether Mrs. Proctor, as trustee, was under a duty to provide for the support of Mrs. Riddick out of the income of the trust established by Mrs. Ball, and, if so, to what extent. This turns upon the construction to be given the following language in the trust indenture:

> "A one-fourth (¼) interest * * * to Mrs. Pattie B. Riddick for life to be held in trust by the said Trustee for her use and benefit and the said Trustee is to manage said one-fourth (¼) for the said Mrs. Pattie B. Riddick and use the rents and profits therefrom or so much thereof as may be necessary to keep her in comfort and at her death all of said one-fourth (¼), together with any accumulated rents or profits thereof shall be conveyed in fee simple by the Trustee as follows * * *"

This language is mandatory, not permissive. It does not provide that the trustee is authorized to use but states that the trustee "is to" use the rents and profits of the trust properties to keep Mrs. Riddick in "comfort." We think it clear that the settlor of this trust, the mother of Mrs. Riddick, used the words "so much thereof as may be necessary" to limit the expenditures to the total amount reasonably required for Mrs. Riddick's support in "comfort" and did not mean thereby that no funds were to be used for this purpose so long as Mrs. Riddick had other properties. The latter interpretation would deprive this incompetent daughter of any benefit from the trust established for her by her mother unless it could be shown that the daughter was in actual financial need.

In Scott on Trusts, 2d ed., § 128.4, it is said:

> "It is a question of interpretation whether the beneficiary is entitled to support out of the fund even though he has other resources. Where the trustee is directed to pay to the beneficiary or to apply for him so much as is necessary for his maintenance or support. The inference is that the settlor intended that he should receive his support from the trust estate, even though he might have other resources."

To the same effect, see: Bogert, Trusts and Trustees, 2d ed., § 811; Restatement of Trusts, 2d ed., § 128(e); 54 Am. Jur., Trusts, § 184; Annot., 101 A.L.R. 1461, 1465.

We, therefore, hold that it was the duty of Mrs. Proctor, as trustee, to apply the income of the trust to the support of Mrs. Riddick in "comfort," in accordance with her age, her station in life and her physical and mental condition, irrespective of any income which might be derived from her own properties.

The right of Mrs. Riddick, under the trust, was not to have the total income of the trust paid to her or used for her benefit, but to have the trustee use the income "to keep her in comfort." Obviously, the amount to be spent and the purpose of the expenditure were left by the settlor to the sound discretion of the trustee in the light of the amount of income available and all the conditions of and surrounding the beneficiary. Scott on Trusts, 2d ed., § 128.4; 54 Am. Jur., Trusts, § 182; Annot.. 101 A.L.R. 1461, 1484 *et seq.* Nevertheless, where, as is here alleged in the complaint and admitted for present purposes by the demurrer, the trustee fails to provide support and accumulates the trust income for the trustee's own advantage, this is an abuse of discretion, and the court will determine the amount which ought to have been used to "keep the beneficiary in comfort."

The court of equity will always compel a trustee to exercise a mandatory power and will control his exercise of a discretion vested in him when it is shown that he has exercised it dishonestly or from other improper motive. *Woodard v. Mordecai,* 234 N.C. 463, 67 S.E. 2d 639. Here the complaint alleges, and the demurrer admits for present purposes, that Mrs. Proctor, as trustee, did not use the trust income for the support of Mrs. Riddick, as it was her duty to do, her motive being to retain it for her own benefit as remainderman. For such a breach of trust, the court of equity will not only give the beneficiary, during her lifetime, relief for the future, but will also require the trustee to pay to the beneficiary, or to her guardian, the amount which the trustee should have expended for her support in the past and did not. In *Collister v. Fassitt,* 163 N.Y. 281, 57 N.E. 490, the court required such payment to the beneficiary for past niggardliness by the trustee, saying:

> "We are of the opinion that the defendant took the residuary estate of the testator charged with the payment of a reasonable amount for the support of the plaintiff in accordance with the terms of the will, and, as she failed to honestly and fairly exercise the discretion vested in her, it was competent for a court of equity to ascertain the amount and decree its payment."

The amount so recoverable by or for the beneficiary, on account of such past breach of the trustee's duty, in the absence of proof of special damages, such as injury to the beneficiary's health due to malnutrition or lack of medical attention, is the amount, not in excess of the trust income, which would have been reasonably required in such past period to support the beneficiary in keeping with her then age, her then physical and mental condition, the amount of the trust income, her usual associates and social activities as contem-

plated by the settlor and any other circumstances throwing light upon the settlor's intention as to the meaning of "comfort," less payments actually made by the trustee for such purpose and less amounts for which the trustee is under a duty to reimburse third persons, including the guardian of the beneficiary, for sums expended by them for the beneficiary's support.

The right of action against the trustee, both for reimbursement of the guardian for funds paid by the guardian for the support of Mrs. Riddick and for damages, if any, for the beneficiary's loss of "comfort" through the trustee's failure to carry out the trust, was vested in the guardian during the continuance of the guardianship. G.S. 33-20. Like other property rights constituting the guardianship estate, it passed to the plaintiff administrator upon the death of the ward. It is not necessary for us to determine whether, in view of the fact that the guardianship and the trusteeship are vested in the same person, any part of the claim against the trustee is barred by the statute of limitations, since that defense cannot be raised by a demurrer for failure of the complaint to state a cause of action. *Harrell v. Powell,* 251 N.C. 636, 112 S.E. 2d 81.

We hold, therefore, that the complaint states facts sufficient to constitute a cause of action against the defendant for violation of duties, both in her capacity as guardian and in her capacity as trustee, that the cause of action is now vested in the plaintiff administrator, that he is the real party in interest and that the superior court had jurisdiction. G.S. 28-147. Consequently, the demurrers *ore tenus* should have been overruled.

The truth or falsity of the allegations of the complaint is yet to be determined. Solely for the purpose of determining the sufficiency of the complaint to allege a cause of action, we have here treated the allegations as admitted by the defendant to be true.

Reversed.