IN THE MATTER OF R. A. SIMMONS, Guardian of ERNIE ALGERNON SIMMONS, Incompetent.

(Filed 23 March, 1966.)

1. Insane Persons § 2—

The clerk of the Superior Court, in the exercise of his probate jurisdiction, has power to remove the guardian of an incompetent for causes

enumerated in the statute, G.S. 33-9, and the clerk's order of revocation upon findings supported by evidence that the guardian had neglected the ward, failed to maintain the ward in a suitable manner, that animosity existed between the guardian and his ward, and that the guardian was one of the ward's next of kin and could thereby benefit from the ward's estate after the ward's death, etc., *held* sufficient to support the clerk's order of revocation.

**2. Same—**

In the absence of other matters of which the court has jurisdiction, the Superior Court has no power to appoint a general guardian for an incompetent.

**3. Same;    Courts § 6—**

On appeal to the Superior Court from order of the clerk removing the guardian of an incompetent for cause, the jurisdiction of the Superior Court is derivative and it may review the record only for errors of law committed by the clerk, since the provisions of G.S. 1-276, requiring a *de novo* hearing, apply only to civil actions and special proceedings and not to an order for removal of a guardian by the clerk in the exercise of duties formerly pertaining to judges of probate.

MOORE, J., not sitting.

APPEAL by R. A. Simmons from an In Chambers order entered on September 16, 1965, by *Cowper, J.*, in the Superior Court of SAMPSON County.

The incompetent, Ernie Algernon Simmons, aged 42 years, by his duly appointed Next Friend, filed a verified petition before the Clerk of the Superior Court of Sampson County, asking that the incompetent's guardian, R. A. Simmons, be removed. The petition alleged: (1) R. A. Simmons was appointed guardian on September 22, 1960, and "acquired the assets of the incompetent's estate . . . valued at $26,000.00 in real estate and $25,500 in personal property." (2) The net income for the years 1961 through 1964, inclusive, as reported by the guardian was: 1961, $24,654.12; 1962, $9,556.62; 1963, $5,855.19; and 1964, $3,398.50. Here quoted verbatim are other allegations of the petition:

"VI. That during the same period the accounts filed by said guardian reflect expenditures for the welfare and maintenance of his ward in the total sum of $5,246.22. . . .

"That included in the totals set forth above are expenditures in the amount of $1,799.33 for a truck, $340.00 for a refrigerator, and $103.00 for a television set. That the majority of the remaining amount was delivered to Millie Kate Simmons as allowance for providing the ward with room and board for a part of the period covered.

"IX. That by virtue of the allegations set forth herein, it is specifically alleged that the fiduciary has neglected to maintain his ward in a manner suitable to his degree.

"X. That by reason of these and other causes, in addition to the matters set out above, the said Ernie Algernon Simmons, incompetent, will suffer irreparable damage by reason of the neglect of the guardian if the Court fails to remove said guardian in accordance with North Carolina General Statutes, Section 33-9."

Pursuant to notice to the guardian, the clerk of the Superior Court conducted a hearing on July 29, 1965. The respondent appeared in person and by counsel, who entered a demurrer *ore tenus* to the petition. The clerk overruled the motion; whereupon the respondent filed answer. The clerk made notes summarizing the evidence at the hearing. In the summary of the respondent's testimony the following appears: "Did not go to see Al while he was in the hospital. Never called any of the family inquiring about how Al is. . . . Has done nothing to help Al since 1964. . . . and intending to keep anyone else from handling this estate." At the conclusion of the hearing the clerk made findings of fact, among them the following:

"VI. That since the initiation of the guardianship the reports and direct evidence from witnesses, including the guardian, clearly establish the fact that the guardian has expended very little for the support and maintenance of his ward. It appears that the primary expenditure was the sum of $75.00 monthly for some period of time made payable to the ward's mother to compensate the mother for the room and board of the ward. That this arrangement required the ward to remain in his mother's home under conditions that were far from favorable to his best interests and welfare. It was further established that during the two-year period prior to said hearing the ward has had little or no benefit from his estate, regardless of the fact that he has needed assistance at many times.

"VIII. That the evidence clearly established, even from the testimony of the guardian, that strong animosity exists between the guardian and his ward. That this animosity and personal feeling also exists between the ward and his mother, and this situation is highly detrimental to the ward's estate. That the guardian testified that he had expended no funds whatsoever for the benefit of his ward since January of 1965, and has made no effort to inquire as to the health and well-being of said ward since that date. That the evidence established

that the guardian has never discussed with his ward any financial needs and has not communicated with him for a long period of time. That in view of these circumstances the ward has found it necessary to live with various members of his family for several months."

"That the said fiduciary has failed and neglected to maintain his ward in a manner suitable to his degree . . . that a conflict of interests between R. A. Simmons, as guardian, and R. A. Simmons, individually, exists.

"X.  The Court further found as a fact that the guardian and his mother are the nearest kin of said ward and could therefore benefit from the ward's estate after his death."

In addition to the notice of the appeal, the clerk sent to the judge the pleadings, the guardian's returns, the notes summarizing the evidence of the witnesses at the hearing, and the order of removal entered thereon. The record does not indicate that any transcript of the evidence, other than the clerk's summary, was taken at the hearing, or that either party made any request for such transcript.

Before Judge Cowper the respondent renewed his demurrer, which the court overruled, and the respondent thereupon made these motions: (1) That the court hear the cause *de novo*. (2) That the court hear additional evidence material to the controversy. (3) That the cause be remanded to the clerk to hear additional evidence and to find additional facts.

"Each of the motions made by the guardian and set out above was denied by the Court; and the Court ruled that its jurisdiction over the matter was derivative only, and that the appeal of the matter would be heard by the Court in its appellate capacity by review of the record as produced by the Clerk of the Superior Court.

"After review of the record from the Clerk of Superior Court and argument of counsel, the Court found that the facts recited in the judgment entered by the Clerk supported said judgment and its conclusions under the terms of N. C. G.S. 33-9";

The court concluded:

"(3)  That the findings of fact related in the judgment entered by the Clerk support the judgment and its conclusions and that the same is hereby affirmed, and said cause is remanded to the Clerk of Superior Court for compliance with the judgment dated August 30, 1965."

The respondent excepted and appealed.

*J. Russell Kirby; Warren & Fowler by Miles B. Fowler for guardian-appellant.*
*Joseph B. Chambliss for incompetent ward, appellee.*

Higgins, J.   Before the Clerk of Superior Court appoints a guardian, he must "inform himself of the circumstances of the case . . . ," and "commit the guardianship . . . as he may think best for the interest" . . . of the incompetent. G.S. 33-7. The clerk has power "on information or complaint" to remove the guardian and revoke his letters for a number of causes: "(3) Where the fiduciary . . . neglects to . . . maintain the ward . . . in a manner suitable to his degree, . . .   (4) Where the fiduciary would be legally disqualified to be appointed administrator . . ." G.S. 33-9. In the absence of other matters of which the court has jurisdiction, the Superior Court has no power to appoint a general guardian. *Moses v. Moses,* 204 N.C. 657, 169 S.E. 273; *In Re Estate of Styers,* 202 N.C. 715, 164 S.E. 123.

The clerk found from the guardian's reports that the net income from the ward's estate dwindled from $24,654.12 in 1961 to $3,398.50 in 1964; and that the total expenditures for the period were $5,236.22, of which $1,799.33 was for a truck, $340.00 for a refrigerator for the respondent's mother, and $103.00 for a television set. The remainder was paid for board and room for the ward. The hearing was conducted on August 30, 1965. The appellant, according to the clerk's notes of his testimony, admitted he did not go to the hospital to see Al and did not make any inquiries and had done nothing to help Al since 1964; that he intended to keep anyone else from handling the estate.

Likewise, according to the notes made by the clerk at the hearing, Mr. Honeycutt, a cousin of the guardian and the ward, who were brothers, testified Al went to the hospital, was disabled for four or five weeks, and for more than four months thereafter lived with the witness who received no pay during the disability and after that only $10.00 per week. Mrs. Honeycutt testified that the mother visited Al once during that time and R. A., not at all.

The clerk found that the guardian and the mother are the ward's next of kin and would benefit from the ward's estate at his death; that the guardian is not interested in the ward's welfare, avoids him when called on to assist, has neglected to maintain the ward in a manner suitable to his degree.

The records and summary of the evidence warrant the clerk's findings which are sufficient to support the order of removal. The defendant contends that G.S. 1-276 applies and that the appeal re-

quired the judge to hear the controversy *de novo*, hear evidence, or remand to the clerk for further findings. These contentions are not sustained. Appeals under G.S. 1-276 are confined to civil actions and special proceedings. The decisions are plenary that the removal of a guardian is neither. The distinction is this: In civil actions and special proceedings the clerk acts as a part of the Superior Court, subject to general review by the judge. In appointment and removal of a guardian the clerk performs "duties formerly pertaining to judges of probate." In the appointment and removal of guardians, the appellate jurisdiction of the Superior Court is derivative and appeals present for review only errors of law committed by the clerk. *In Re Will of Hine*, 228 N.C. 405, 45 S.E. 2d 526; *Moses v. Moses, supra; Edwards v. Cobb*, 95 N.C. 4. In exercising the power of review, the judge is confined to the correction of errors of law. The hearing is on the record rather than *de novo*. *In Re Sams*, 236 N.C. 228, 72 S.E. 2d 421, citing many cases. In *Sams* the judge heard the appeal, apparently *de novo*, and affirmed the clerk. This Court affirmed upon the ground "there was no exception or objection to the *de novo* hearing in the Superior Court, and upon the record as presented no prejudicial error is made to appear." In the cases in which this Court has held the judge may review the appeals from the clerk *de novo*, these cases involved other matters which are not exclusively of a probate nature. The other matters convert the controversy into a civil action or a special proceeding reviewable under G.S. 1-276. *Perry v. Bassenger*, 219 N.C. 838, 15 S.E. 2d 365; *Windsor v. McVay*, 206 N.C. 730, 175 S.E. 83; *Wright v. Ball*, 200 N.C. 620, 158 S.E. 192.

In this case, as in *Sams*, error of law does not appear. The judgment entered in the Superior Court is

Affirmed.

MOORE, J., not sitting.