GERTRUDE B. PARKER, CO-GUARDIAN OF IRENE BEASLEY BAREFOOT, INCOMPETENT, PETITIONER v. HUBERT A. BAREFOOT, CO-GUARDIAN OF IRENE BEASLEY BAREFOOT, INCOMPETENT, RESPONDENT

No. 8211SC361

(Filed 15 March 1983)

**1. Insane Persons § 2.3; Rules of Civil Procedure § 52.1 — petition to remove guardian — appeal to superior court — findings not necessary**

A superior court judge was not required to make findings of fact in his order reversing an order of the clerk of court in which the clerk refused to remove respondent as a co-guardian of an incompetent since the superior court had only derivative jurisdiction to hear questions of law and did not try the action upon the facts. G.S. 1A-1, Rule 52(a)(1).

**2. Insane Persons § 2.3 — removal of guardian of incompetent — wasting or converting estate or money of ward**

Findings of fact made by the clerk of court supported a superior court judge's conclusion that respondent should be removed as co-guardian of an incompetent pursuant to G.S. 33-9(1) for wasting or converting the estate or money of the ward to his own use where the findings indicated that respondent rented land from his incompetent mother for less than fair market value; respondent profited from this rental at the expense of the incompetent; respondent rented the incompetent's land privately and without showing it would serve the best interest of his ward to do so in violation of G.S. 33-21; and respondent refused to agree with his co-guardian to raise the rent to the fair market value.

APPEAL by respondent from *Britt, Judge.* Order entered 3 March 1982 in Superior Court, JOHNSTON County. Heard in the Court of Appeals 15 February 1983.

This is an appeal from an order of the Superior Court reversing the order of the clerk of Superior Court. Petitioner, Gertrude B. Parker, is the daughter and co-guardian of Irene Beasley Barefoot, who is incompetent. Respondent, Hubert A. Barefoot, is the son and co-guardian of Irene Beasley Barefoot. Petitioner filed a petition with the clerk of Superior Court seeking removal of her brother, the respondent, as co-guardian of their mother. The petitioner alleged that respondent refused to charge a sufficient and fair rent to tenants of real property in which their incompetent mother held a life estate. Petitioner also alleged that respondent, as a tenant of the real property in which the incompetent held a life estate, had individually profited by setting a low rent to be paid to the incompetent's estate.

The clerk made findings of fact which include the following: Gertrude B. Parker and Hubert A. Barefoot were appointed co-guardians of their mother, Irene Beasley Barefoot, after she was adjudged incompetent to manage herself and her affairs due to infirmities of old age and disease. Hubert Barefoot, Gertrude Parker, James Barefoot, Hobert Barefoot, Ova Lee Barefoot, and the children of Sherrill Barefoot, deceased, who are Michael Barefoot, Kathy B. Jackson, and Sandra Barefoot, are all the children and grandchildren of the incompetent, and all own a remainder interest in the property in which the incompetent has a life estate. The co-guardians were advised that the children and grandchildren of the incompetent could rent the "tobacco and farm land" if all the children and grandchildren could agree upon a fair rental price to be paid to the incompetent.

The clerk also found:

. . .

4. That all of the parties agreed upon the figure of $2,100 for each child of Mrs. Irene Beasley Barefoot to be paid for the tobacco and land rental into the estate of Irene Beasley Barefoot for the year 1981.

5. That at the time of the hearing of this action on November 17, 1981, the Co-Guardian defendant, Hubert A. Barefoot, had suggested a price of $2,500 per child for the rental of tobacco and farm land from the Estate of Irene Beasley Barefoot, incompetent, for the year of 1982; Co-Guardian plaintiff, Gertrude Parker, did not agree with this figure and felt that it should be substantially more contending that this is the reason why Hubert A. Barefoot should be removed as Co-Guardian.

6. That Ova Lee Barefoot agrees with Gertrude Barefoot Parker's position that more money should be charged for the rental; that James Garland Barefoot, Hobert V. Barefoot and the children of the deceased son, Sherrill Barefoot, agree with Hubert A. Barefoot's position that $2,500 per child is a sufficient and fair amount for the rental of said property and tobacco.

7. That Hubert A. Barefoot acknowledges that the fair market rental value of said farm land and tobacco would be

higher than $2,500 per child and in fact, each child received more than $2,500 in rent for the year 1981.

8. That Hubert A. Barefoot's family along with the family's [sic] of James Garland Barefoot, Hobert V. Barefoot and Gertrude Barefoot Parker and the family of the deceased son, Sherrill Barefoot, each rotate every weekend to take care of their mother, Irene Beasley Barefoot, without any compensation; that Ova Lee Barefoot who resides in Baltimore does not participate in this weekend rotation with the other brothers and sister.

9. That the incompetent, Irene Beasley Barefoot resides in the home to which Ova Lee Barefoot has a remainder interest and he therefore, does not receive any rent for his home which he considers unfair since some of the other children, Hubert A. Barefoot, Hobert V. Barefoot and the children and spouse of the deceased son, Sherrill Barefoot, each reside in a home which they have restored on their share of the property to which they have a remainder interest.

10. That Ova Lee Barefoot has proposed that each acre of cleared land that each child has a remainder interest in to be rented according to a schedule which he submitted to the Court through Gertrude Parker's attorney and that all the tobacco allotment be rented at $.50 a pound according to this schedule and that Hubert A. Barefoot, the children of the deceased Sherrill Barefoot and Hobert V. Barefoot each pay $1,000 per year rent for the house and structures on their remainder interest which they have restored through their own funds. A copy of this proposal is attached to this Order which would provide the incompetent ward with funds in the amount of $24,626.10.

11. Hubert A. Barefoot submitted a proposal which provided that each child would pay $3,500 for the tobacco and land rent except for Ova Lee Barefoot who would pay $2,600 which would give the incompetent's estate $20,100. This proposal is also attached to this Order which was presented to the Court by Hubert A. Barefoot's attorney.

12. That Hubert A. Barefoot feels that since his father had this property divided up by three independent people in

what he considered equal shares, each child should have to pay the same amount to the estate of Irene Beasley Barefoot without taking into account that some of the children have made improvements to their remainder interest through their own funds since said real property was divided by their father; Gertrude Barefoot Parker contends and feels that each child's share should be rented at the fair market value regardless of the fact that some of the children have put their own money into the farms to make improvements to the real property as well as the structures on the real property since said farm was divided by their father.

13. That Hubert A. Barefoot does not feel that he should charge rent on the houses which have been remodeled and improved at each child's expense since the division was made in the property by their father and that this would be inequitable to those who have put money into their dwelling houses and other structures.

14. Hubert A. Barefoot feels that although Ova Lee Barefoot does not receive rent from his house where his mother is presently residing, the house is being maintained by the estate, whereas all the other dwelling houses and structures are not and Ova Lee Barefoot does not participate in taking care of his mother along with the other children; and therefore, paying an equal share for the farm rental would be fair to Ova Lee Barefoot.

15. Testimony shows that Mrs. Irene Beasley Barefoot is taken care of and does not go without anything that she desires but that there has been conflict between the Co-Guardians about some of the items that have been bought for Mrs. Barefoot or for the house in which she resides. The Co-Guardians have eventually worked out these conflicts, but there is tension between the Co-Guardians.

16. There is around $5,500 in a savings account for Irene Beasley Barefoot and close to $8,000 in a checking account; that during the past year approximately $22,379 has been taken into the estate and approximately $15,644 has been expended from the estate.

17. That Gertrude Parker Barefoot has expressed her concern over the wellbeing of her mother and ward in the

future in case she becomes worse off and must be placed in a nursing home or a rest home, and therefore, feels that every dollar that can be obtained at this time for rent on said real property should be obtained.

18. That Hubert A. Barefoot feels that his mother will be taken care of by all of her children regardless of what happens to her and that funds will be made available to the estate by all the children regardless of the amount of rent charged.

19. That Hubert A. Barefoot and wife, Hobert V. Barefoot and wife, James Garland Barefoot and wife and the children and their spouses of the deceased son Sherrill Barefoot have proposed to give an open-ended Note and Deed of Trust on their remainder interest in said property which would include all improvements and structures made by the children since the division by their father to the estate of their mother, Irene Beasley Barefoot, in order to protect against there not being adequate funds to take care of their mother in the future as part of this proposal they would still be willing to pay $2,100 to $2,500 for rent of the tobacco and farm land to the estate. Gertrude Parker Barefoot and Ova Lee Barefoot have refused to participate in this open-ended deed of trust and are not in agreement with this proposal.

Based on these findings, the clerk concluded that respondent had acted in the incompetent's best interest and had faithfully executed his responsibilities as co-guardian. He also concluded that the real property and tobacco allotment would be put up for public auction pursuant to N.C. Gen. Stat. § 33-21 if the co-guardians could not agree on a rent to be paid to the incompetent. The clerk ordered that respondent remain a co-guardian.

Petitioner appealed to Superior Court, which reviewed the clerk's order for errors of law. The Superior Court judge concluded that N.C. Gen. Stat. § 33-9(1) required removal of respondent as co-guardian. The judge ordered respondent removed, and respondent appealed to this Court.

*Morgan, Bryan, Jones & Johnson, by Dwight W. Snow for petitioner, appellee.*

*Levinson & Berkau, by Thomas S. Berkau for respondent, appellant.*

Parker v. Barefoot

HEDRICK, Judge.

[1]   The respondent sets forth three assignments of error on appeal. First, he contends that the Superior Court erred in failing to state findings of fact in its order. Under Rule 52(a)(1) of the North Carolina Rules of Civil Procedure, a judge is required to state findings of fact "[i]n all actions tried upon the facts. . . ." However, in the present case the Superior Court judge was not trying the action upon the facts; instead, the Superior Court judge had only derivative jurisdiction to hear questions of law. *In Re Simmons*, 266 N.C. 702, 147 S.E. 2d 231 (1966). The judge of Superior Court was not required to state findings of fact because he was bound by the clerk of Superior Court's findings.

[2]   The respondent next contends there were no findings of fact in the clerk's order to support the judge's conclusion of law that respondent be removed as co-guardian. While we recognize that much of that portion of the clerk's order designated as "findings of fact" is nothing more than a recital of the evidence and contentions of other children and grandchildren, and that many of the clerk's "findings of fact" are irrelevant to the issue raised by the pleadings and evidence, we are of the opinion that the clerk's order does contain sufficient legitimate findings of fact to support the judge's conclusion that the respondent had wasted or converted the estate or money of the ward to his own use, in violation of N.C. Gen.   Stat. § 33-9(1). The findings of fact indicate respondent rented land from his incompetent mother for less than fair market value. Respondent profited from this rental at the expense of the incompetent. Respondent rented the incompetent's land privately and without showing it would serve the best interests of his ward to do so, in violation of N.C. Gen. Stat. § 33-21. Finally, respondent refused to agree with his co-guardian, the petitioner, to raise the rent to fair market value. Apparently, the respondent also lived rent-free in a home in which the incompetent had a life estate. These findings of fact by the clerk demonstrate that respondent violated his fiduciary duty and should have been removed as co-guardian pursuant to N.C. Gen. Stat. § 33-9(1), which states:

> The clerks of the superior court have power and authority on information or complaint made to remove any fiduciaries appointed under the provisions of this Chapter . . . and it is their duty to do so in the following cases:

(1) Where the fiduciary wastes or converts the money or the estate of the ward to his own use.

The respondent's last assignment of error is that the Superior Court judge did not limit himself to reviewing questions of law. However, the judge's order states that it is based on the clerk's findings of fact, and that the clerk's error was one of law. Since the clerk's findings of fact squarely support the Superior Court judge's conclusion of law, it is clear the judge did not make new findings of fact but ruled only on matters of law.

Since, as we have already seen, the Superior Court judge's jurisdiction in this matter is derivative only, *In Re Simmons*, 266 N.C. 702, 147 S.E. 2d 231 (1966), we hold the judge's order removing the co-guardian must be reversed, and the cause must be remanded by the Superior Court to the clerk for an order removing the co-guardian. We affirm that portion of the order of the judge of Superior Court which declares that the findings made by the clerk require the removal of the co-guardian pursuant to N.C. Gen. Stat. § 33-9(1).

Affirmed in part, reversed and remanded with instructions in part.

Judges WHICHARD and BRASWELL concur.