IN THE MATTER OF WILLIAM C. FLOWERS

No. COA99-1187

(Filed 3 October 2000)

**1. Guardian and Ward— incompetency—superior court's standard of review**

The superior court's standard of review in a proceeding to appoint a guardian for a person declared to be incompetent is confined to the correction of errors of law based on the record rather than a de novo review.

---

IN RE FLOWERS

[140 N.C. App. 225 (2000)]

## 2. Guardian and Ward— incompetency—appointment of guardian

The clerk of court did not err by appointing one of the incompetent father's sons as guardian for the father, because there was plenary evidence to support the clerk's findings that: (1) the father had the legal capacity to sign documents and was competent at the time he signed the general power of attorney and the health care power of attorney nominating his wife or his son to be guardian; (2) no good cause was shown why the son should not serve as general guardian for his father; and (3) the appointment of the son as guardian is in the best interest of the father.

## 3. Appeal and Error— appealability—no finding—argument minimally related to assignment of error

Although petitioners contend there was insufficient evidence in a guardianship proceeding to justify the clerk of court's finding that a will of the incompetent father would be probated that would devise the bulk of his estate to one of his sons, this argument is without merit because: (1) the clerk never made a finding in this regard; (2) petitioners' argument is minimally related to its assignment of error when the issue presented is the proper or improper appointment of a guardian, and the case law cited and argued relates to the validity or invalidity of a will; and (3) the potential invalidity of the father's will, power of attorney, and health care power of attorney showing the father's reliance on his son was a fact to be considered by the clerk in weighing the credibility of the evidence.

Appeal by petitioners from order entered 17 August 1999 by Judge Charles H. Henry in Carteret County Superior Court. Heard in the Court of Appeals 22 August 2000.

*Wheatly, Wheatly, Nobles & Weeks, P.A., by C.R. Wheatly, Jr., for petitioner-appellants Patricia Flowers Piner, Joseph M. Flowers, and William C. Flowers, Jr.*

*Mason & Mason, P.A., by L. Patten Mason, for appellee Richard C. Flowers.*

SMITH, Judge.

On 9 June 1999, petitioner Patricia Flowers Piner (Patricia) filed in Carteret County Superior Court a "Petition for Adjudication of

Incompetence and Application for Appointment of Guardian." She sought to have her father, William C. Flowers (Mr. Flowers), declared incompetent and a "Public Guardian" appointed to handle Mr. Flowers' affairs. On 24 June 1999, the Clerk of Superior Court of Carteret County conducted a hearing on the matter. During the hearing, L. Patten Mason, attorney for Richard Cass Flowers (Cass), who is a son of Mr. Flowers, moved that Cass be appointed guardian. His motion was "predicated upon the alleged powers of attorney appointing him as such and also to the effect that he was the only one who really understood the properties owned by [Mr. Flowers], and that he would be capable of managing the so called estate."

By order filed 25 June 1999, the court allowed petitioners Joseph M. Flowers (Joseph) and William C. Flowers, Jr. (William), sons of Mr. Flowers, to be made parties to the action. On 29 June 1999, the clerk entered an order finding "clear, cogent, and convincing evidence that [Mr. Flowers] is incompetent" and appointing Cass guardian for Mr. Flowers. Petitioners appealed to the superior court, which, in an order entered 17 August 1999, concluded:

1. The clerk's findings of fact in her June 29, 1999 order are supported by the evidence and testimony received during the June 24, 1999 hearing.

2. The clerk's conclusions of law are supported by her findings of fact contained in the above order.

3. The clerk has not abused her discretion in the appointment of Richard Cass Flowers as general guardian.

From this order, petitioners now appeal.

I.

[1] We first point out the superior court's standard of review in a proceeding to appoint a guardian for an incompetent:

In the appointment and removal of guardians, the appellate jurisdiction of the Superior Court is derivative and appeals present for review only errors of law committed by the clerk. In exercising the power of review, the judge is confined to the correction of errors of law. The hearing is on the record rather than *de novo*.

*In re Simmons*, 266 N.C. 702, 707, 147 S.E.2d 231, 234 (1966) (internal citations omitted); *see also In re Bidstrup*, 55 N.C. App. 394, 396, 285 S.E.2d 304, 305 (1982) ("The clerk's appointment of a guardian for

an incompetent's estate therefore involves a determination too routine to justify saddling a superior court judge with a review any more extensive than a review of the record."). Likewise, when the superior court sits as an appellate court, "[t]he standard of review in this Court is the same as in the Superior Court." *In re Estate of Pate*, 119 N.C. App. 400, 403, 459 S.E.2d 1, 2-3 (1995) (citation omitted).

## II.

[2] Petitioners first contend the clerk of court erred in appointing Cass as guardian for Mr. Flowers. They argue that the evidence before the clerk substantiated their claim that Cass "had already obtained over three and one-half million dollars from [Mr. Flowers] by the use of a power of attorney that was fraudulently obtained and was holding said sum for his own use and benefit." Accordingly, petitioners contend, the clerk's appointment of Cass was contrary to law and reversible error. We disagree.

Looking to the record as it was submitted to us,[1] the evidence of Mr. Flowers' incompetence was uncontested and not challenged on appeal. Mr. Flowers' decline began in the early 1990's; his communication skills had greatly declined by the end of 1995 and had ceased by 1998.

Other evidence before the clerk was that Mr. and Mrs. Flowers resided in the motel they owned and ran in Atlantic Beach. William, a resident of Kannapolis, testified that he visited several times a year. He testified that when the motel burned down in early 1996, Cass took Mr. and Mrs. Flowers in and helped rebuild the motel. The Flowers' returned to the motel upon completion of the renovation. When Mrs. Flowers died, Cass assumed the care-taking of Mr. Flowers.

The middle son, Joseph, also testified. Joseph lives in Florida and testified that he had visited several times since Mr. Flowers got sick and that recently Mr. Flowers was unable to acknowledge Joseph was his son. He testified that Cass seemed to be responsible for the ongoing care of Mr. Flowers; Mr. Flowers' physical care was good.

Patricia testified she has had a good relationship with her father. However, when she inquired in July 1995 about his hygiene, Mr. Flowers asked her to leave. Her next visit to her parents was after the

---

1. We note that no transcript of the hearing before the clerk was included in the record on appeal. Accordingly, our review is limited to the clerk's notes and statement and exhibits, all of which were included in the record.

motel burned. From January to mid-October 1998, Patricia ran the motel for her father. She testified she did not visit her parents when they were with Cass. Patricia further testified that Cass has provided for Mr. and Mrs. Flowers, but contended that he received expense checks from the motel.

Also testifying was Robert Cummings (Cummings), the attorney who drafted Mr. Flowers' will and power of attorney in 1995. After counseling Mr. and Mrs. Flowers, he formed the opinion that Mr. Flowers was competent. Accordingly, he prepared the documents and sent them to Mr. and Mrs. Flowers for their review. The couple made a few changes and came to Cummings' office to sign the will. Cummings went over the details of the will with Mr. Flowers. They conversed about family and politics. Cummings testified that Mr. Flowers gave good answers but seemed a bit hard of hearing. Mr. Flowers signed the documents in the presence of witnesses. Cummings spoke again with Mr. and Mrs. Flowers on two or three occasions after the motel burned. On 8 August 1997, he prepared an affidavit regarding Mr. Flowers' competence.

Cecil Harvell (Harvell), an attorney hired by Cass in 1998, prepared an irrevocable trust, which was signed by Mr. Flowers and was for the benefit of Mr. Flowers during his lifetime and, upon the death of Mr. Flowers, for the benefit of Cass's children. Harvell testified that the purpose of the trust was to give relief from federal estate and inheritance taxes.

Several documents were entered in evidence: (1) Mr. Flowers' 1995 will left all of his tangible property to his wife if surviving, otherwise to Cass. It gave $100.00 to each of the four children; it provided that, of Mr. Flowers' shares of stock in Flowers Development Corporation, Inc., one-half each would be distributed to Mrs. Flowers and Cass. Mr. Flowers' residuary estate was bequeathed to his wife, if surviving, otherwise to Cass. Cass and Mrs. Flowers were appointed co-executors of his estate. (2) Mr. Flowers' 1995 general power of attorney appointed Mrs. Flowers and Cass as attorneys-in-fact. (3) Mr. Flowers' 1995 health care power of attorney appointed Mrs. Flowers and Cass as health care attorneys-in-fact. (4) Cummings' affidavit detailed the correspondence involved in drafting the 1995 documents and attested to the competence of Mr. Flowers at the time of execution. (5) An Amendment and Restatement of Power of Attorney, signed by Mr. Flowers in December 1998, again appointed Cass as attorney-in-fact and Sylvia M. Flowers as successor attorney-in-fact.

**IN RE FLOWERS**

[140 N.C. App. 225 (2000)]

Based on the foregoing evidence, the clerk made the following findings of fact:

1. On the 11th day of May, 1995, William C. Flowers signed a general power of attorney as well as a health care power of attorney, both of which documents provided that in the event it became necessary for a court to appoint a guardian of W.C. Flowers' property, he nominated his agents (Richard Cass Flowers and Grace L. Flowers) to be guardian of his property and to serve without bond or security. Grace L. Flowers is now deceased.

2. The general power of attorney and health care power of attorney above referenced both provided that if one of the agents or attorneys in fact was unable to serve, then William C. Flowers appointed the remaining agent to act as his successor agent and to be vested with the same powers and duties.

3. At the time William C. Flowers signed the general power of attorney and the health care power of attorney, he was competent and had the legal capacity to sign said documents.

4. The guardian ad litem recommended to the Clerk that Richard Cass Flowers be appointed general guardian for his father, William C. Flowers.

5. Richard Cass Flowers has cared for his father and been responsible for his father's estate exclusively since the time of his mother's death in August of 1998.

6. Richard Cass Flowers' performance of his duties in caring for the personal and estate interests of William C. Flowers has been pursuant to the 1995 power of attorney and health care power of attorney.

7. Richard Cass Flowers has kept accurate records of the receipts and expenditures that he has handled [o]n behalf of his father.

8. The petitioner has requested the Clerk to appoint the public guardian to serve as general guardian for William C. Flowers.

9. The estate of William C. Flowers consists of a motel, rental property and other assets which require extensive time and

knowledge to manage. The public guardian does not have the time, personnel or resources to be guardian of the estate of William C. Flowers.

Based on these findings, the clerk concluded:

2. At the time William C. Flowers signed the general power of attorney and the health care power of attorney, he was competent and had the legal capacity to sign said documents.

3. Richard Cass Flowers is not disqualified from being general guardian of his father's estate and person.

4. No good cause has been shown as to why Richard Cass Flowers should not serve as general guardian for his father.

5. The appointment of Richard Cass Flowers as guardian for his father, William C. Flowers, is in the best interest of William C. Flowers[.]

Our review of the record shows plenary evidence to support the clerk's findings, and we discern no error of law in appointing Cass as guardian. The clerk aptly reviewed the evidence and applied the law to the evidence presented. This assignment of error is overruled.

### III.

[3] Petitioners next contend "there was insufficient evidence offered at the hearing to justify the clerk to find that a will of William C. Flowers would be probated that would devise the bulk of the estate of William C. Flowers to Richard Cass Flowers." This argument is without merit.

First, the phraseology of petitioners' argument would lead one to believe that the clerk made a "finding of fact" that Mr. Flowers' will would devise the bulk of his estate to Cass. However, no such finding exists. The only language resembling that offered by petitioners is found in a document entitled "Statment [sic] by Clerk on Appeal," which was submitted to the superior court on petitioners' appeal. The statement reads in pertinent part:

The Court notes that if it appears that [Cass] has been presumptuous with indicating how property in the Trust should be directed upon the death of his father, it does follow the direction of the Last Will and Testament. Taking all matters in considera-

tion, it is reasonable to believe that the copy of the Last Will and Testament could be probated, at the proper time.

The clerk never made a "finding" in this regard; indeed, such a finding would have been beyond the scope of the clerk's authority.

Second, in making this argument, petitioners' brief refers this Court to its Assignment of Error #2, which reads: "The appointment of the guardian was made on the basis of a false representation or a mistake by the Clerk in considering alleged copies of a will, health care power of attorney, and general power of attorney, the originals of which were destroyed." The argument made in their brief, while referencing Assignment of Error #2, is at best minimally related to the assigned error. The case law cited and argued on appeal relates solely to issues surrounding the validity or invalidity of a will. The issue presented to the clerk, and now on appeal to this Court, is the proper or improper appointment of a guardian. Mr. Flowers' will, power of attorney, and health care power of attorney merely evidenced Mr. Flowers' trust in and reliance on Cass and his desire to provide for a child who had provided care and support for him. The potential invalidity of the documents was a fact to be considered by the clerk in weighing the credibility of the evidence. Accordingly, this assignment of error is overruled.

As a final matter, we note that petitioners' assignments of error set forth in the record on appeal fail to make "clear and specific" references to the record or transcript. N.C. R. App. P. 10(c)(1). While this alone subjects an appeal to dismissal, we have thoroughly considered the arguments raised on this appeal and found them meritless. The order of the superior court is affirmed.

Affirmed.

Judges GREENE and EDMUNDS concur.