IN THE MATTER OF MYRNA CADDELL, PATRICIA CURRIN, as Guardian, Petitioner v. JAMES M. JOHNSON, Guardian Ad Litem for MYRNA CADDELL, Respondent

AND

IN THE MATTER OF VELMA CADDELL, PATRICIA CURRIN, as Guardian, Petitioner v. DWIGHT W. SNOW, Guardian Ad Litem for VELMA CADDELL, Respondent

No. COA99-1153

(Filed 5 December 2000)

**Guardian and Ward— renunciation of estate—not in ward's best interest**

The clerk of superior court did not err by concluding that it was not in the interest of the ward to disclaim her share in an estate where there was no obvious benefit in renouncing her share of the estate. There was no reason to artificially create a need for public assistance when private funds are available to pay the cost of her nursing home care. Furthermore, there is no evidence that the ward would, if mentally competent, disclaim this inheritance in favor of other legatees.

Appeal by petitioner from order entered 5 May 1999 by Judge Henry V. Barnette, Jr. in Superior Court, Harnett County. Heard in the Court of Appeals 17 August 2000.

*Sharon A. Keyes for petitioner-appellant Patricia Currin, as Guardian for Velma and Myrna Caddell.*

*Dwight W. Snow, Guardian Ad Litem for respondent-appellee Velma Caddell, and James M. Johnson, Guardian Ad Litem for respondent-appellee Myrna Caddell.*

TIMMONS-GOODSON, Judge.

Patricia Currin ("petitioner") appeals the denial of her petition for leave to disclaim the interests of her wards, Velma and Myrna Caddell, in the estate of Carson R. Coats. The relevant facts follow.

At the time of the 8 October 1998 hearing before the Clerk of Superior Court, Velma was eighty-two years old and was in reasonably good health. Her daughter, Myrna, was fifty-eight years old and, like her mother, had no significant physical ailments. Velma and Myrna both were born with mental disabilities and, throughout their

CADDELL v. JOHNSON

[140 N.C. App. 767 (2000)]

respective lives, have depended heavily on Velma's siblings, the Coats family, to care for them and to support them financially. After Velma's marriage to Jesse Caddell and the birth of their daughter, Myrna, the Coats family made it possible for the Caddells to live somewhat independently in a house situated on Coats property. However, when Jesse died in April of 1996, the Coats family moved Velma and Myrna to the Brookfield Retirement Center in Lillington, North Carolina, where they currently reside.

As residents of Brookfield, Velma and Myrna each incur monthly living expenses in the amount of $950.00. Both women receive public assistance totaling $944.00 per month, i.e., a Social Security payment of $499.00, a SSI disbursement of $15.00, and a State Special Assistance benefit of $430.00. In addition, the Coats family supplies Velma and Myrna with food, clothing and personal health care items, the cost of which approximates $100.00 per month for each.

In October 1996, Velma's brother, Carson R. Coats, died testate in the State of Virginia. Under his will, he bequeathed his entire estate in four equal shares to his surviving siblings, Velma, Wayne Coats, Valeria Adams, and Coma Lee Currin. Velma's inheritance is approximately $200,000.00, and since she has no other assets, the bequest comprises her entire estate. Because of her mental disability, Velma lacks the capacity to make and execute a will. Thus, upon her death, her estate will pass by intestate succession to her daughter, Myrna (provided she survives Velma). Similarly, Myrna's estate, upon her death, will be distributed to her intestate heirs.

In 1997, Velma's sisters, Valeria and Coma Lee, disclaimed their inheritances under Carson's estate so that the monies would pass directly to their children without incurring additional estate taxes. Seeking a similar result with respect to Velma's inheritance, petitioner, as Guardian for Velma and Myrna, petitioned the Harnett County Clerk of Superior Court for leave to disclaim Velma's share of the estate and the interest that would pass to her daughter, and sole heir, Myrna. Following two evidentiary hearings, the Clerk denied the petition, concluding that it was not in Velma's best interest to disclaim her inheritance. The Clerk's ruling rendered moot the issue of whether petitioner should then be permitted to disclaim Myrna's interest in the estate. On appeal, the Superior Court approved and affirmed the Clerk's order. Petitioner filed notice of appeal to this Court.

## CADDELL v. JOHNSON

[140 N.C. App. 767 (2000)]

The Clerk of Superior Court has original jurisdiction over matters involving the management by a guardian of her ward's estate. *See In re Lancaster*, 290 N.C. 410, 423, 226 S.E.2d 371, 379 (1976) (recognizing that duty to protect infants and incompetents "has been entrusted by statute to the clerk of superior court in the first instance.") An appeal to the Superior Court from an order of the Clerk " 'present[s] for review only errors of law committed by the clerk.' " *In re Flowers*, 140 N.C. App. 225, 227, 536 S.E.2d 324, 327 (2000) (quoting *In re Simmons*, 266 N.C. 702, 707, 147 S.E.2d 231, 234 (1966) (internal citations omitted)). The reviewing judge conducts a hearing on the record, rather than *de novo*, with the objective of correcting any error of law. *Id.* "Likewise, when the superior court sits as an appellate court, '[t]he standard of review in this Court is the same as in the Superior Court.' " *Id.* (quoting *In re Estate of Pate*, 119 N.C. App. 400, 403, 459 S.E.2d 1, 2-3 (1995) (citation omitted)).

Petitioner first contends that the Clerk erred by concluding that it was not in Velma's best interest to disclaim her inheritance under Carson's estate. Petitioner argues that a renunciation would best serve the interests of her wards, because it would "preserve [their] inheritance for their ultimate intended beneficiaries" and would "maintain the wards' government benefits." We are not persuaded.

The relevant statute, section 35A-1251 of our General Statutes, provides as follows:

> In the case of an incompetent ward, a general guardian or guardian of the estate has the power to perform in a reasonable and prudent manner every act that a reasonable and prudent person would perform incident to the collection, preservation, management, and use of the ward's estate to accomplish the desired result of administering the ward's estate legally and in the ward's best interest, including but not limited to the following specific powers:
>
> . . . .
>
> (5a) To renounce any interest in property as provided in Chapter 31B of the General Statutes, or as otherwise allowed by law.

N.C. Gen. Stat. § 35A-1251(5a) (1999). "[T]he guardian is always under a fiduciary obligation to manage the estate reasonably, prudently, and in the ward's best interest[.]" *Cline v. Teich*, 92 N.C. App. 257, 261, 374 S.E.2d 462, 465 (1988). Although the guardian is not

CADDELL v. JOHNSON

[140 N.C. App. 767 (2000)]

required to exercise infallible judgment in the preservation and management of her ward's estate, she is expected to exhibit "ordinary diligence and the highest degree of good faith" in the performance of her fiduciary responsibilities. *Kuykendall v. Proctor*, 270 N.C. 510, 516, 155 S.E.2d 293, 299 (1967).

As reflected in the Clerk's findings of fact, the evidence of record shows that Velma's monthly expenses at the retirement home total $950.00. Each month, she receives $944.00 in government benefits and approximately $100.00 from the Coats family in food, clothing, and personal items. The record further discloses that Velma's share of Carson's estate is approximately $200,000.00. If she takes the inheritance, she will forfeit her State Special Assistance benefit of $430.00 per month, and she will have to reimburse the State for the amount of such assistance she received over a period of two years, i.e., approximately $10,320.00. However, accepting the bequest will not result in the loss of her monthly SSI disbursement of $15.00 or her Social Security payment of $499.00.

In light of these facts, we can see no obvious benefit to Velma in renouncing her share of Carson's estate. We agree with the finding by the Clerk that the interest and investment income earned on the sum of $200,000.00 (or $189,680.00, after Velma reimburses the State) "will more than offset her loss of $430.00 a month in state benefits" and the $100.00 provided each month by her siblings. Thus, we see no reason to disclaim Velma's inheritance and thereby artificially create a need for public assistance, when private funds are available to pay the cost of her nursing home care. To do so would unnecessarily deplete public resources intended to benefit those exhibiting a genuine financial need. Therefore, we hold that the Clerk did not err in concluding that it was in Velma's best interest to share in Carson's estate.

As to petitioner's contention that a renunciation would preserve the inheritance for the "ultimate intended recipients" of Velma's estate and Myrna's estate, we reiterate that in determining whether renunciation is appropriate, the primary concern is the best interest of the ward. N.C.G.S. § 35A-1251. Furthermore, there is absolutely no evidence in the record that either Velma or Myrna would, if mentally competent, disclaim her inheritance under Carson's will in favor of the other legatees. Nonetheless, petitioner vehemently argues that the bequest should be relinquished to those persons who would take it by default, i.e., Wayne Coats, the children of Valeria Adams, and the children of Coma Lee Currin. As the spouse of Coma Lee Currin's son, petitioner has a personal, albeit indirect, stake in the outcome of this

proceeding. Given petitioner's arguably adverse interest to those of her wards and the absence of any evidence that either ward would renounce her inheritance, we hold that the Clerk did not err by denying petitioner's request for leave to disclaim Velma's and Myrna's interests in the estate of Carson R. Coats.

We have examined petitioner's remaining argument and, in light of the preceding discussion, find it lacking in merit. The order of the Superior Court is affirmed.

Affirmed.

Judges WYNN and McGEE concur.